NELSON H. TUNNICLIFF, ADMINISTRATOR, ET AL. V. PHILIP
FOX ET AL.

FILED APRIL 30, 1903.    No. 12,482.

1. **Instruction:** "LEGAL SITUS" OF STOCK. An instruction will not be
held erroneous on account of the use of a technical term therein
without explanation, if the charge of the court, as a whole, suffi-
ciently explains the sense in which such term is used and is to
be understood by the jury.

2. **Foreign Executor:** DOMESTIC ANCILLARY ADMINISTRATOR: ACCOUNT-
ING. An executor whose domicile is in Wisconsin, and who also
qualifies as ancillary administrator in Nebraska, can not be
charged as such ancillary administrator with property of the
estate whose legal *situs* is in Wyoming, and for which he ac-
counted to the court of Wisconsin.

3. **Instruction:** ASSUMPTION OF VITAL FACT IN ISSUE. The question
whether the legal *situs* of certain personalty belonging to the es-
tate was in Wyoming or in Nebraska having been, by proper in-
structions, submitted to the jury, another instruction which in
substance charges that the executor, as ancillary executor in
Nebraska, will not be liable to the estate for personal property
whose legal *situs* is in Wyoming, will not be held bad on the
ground that it assumes the existence of property in Wyoming.

4. **Trustee Appointed Executor:** ACCOUNTING AS ANCILLARY EXECUTOR.
A Wisconsin executor, prior to the death of the testatrix, had been
the latter's trustee, and afterwards became charged with certain
personal property which he had managed as trustee. In filing his
report as executor in the Wisconsin court, he included therein a
schedule of property coming into his possession, and an account
of his doings as such trustee. His report was approved, and he
was duly discharged. Before such discharge, he qualified as
ancillary executor in Nebraska, filing in the Nebraska court a
copy of his report as executor theretofore filed in the Wisconsin
court, which included his report as trustee. In a proceeding
instituted in Nebraska, resisting the allowance of his final report
as ancillary executor, *held*, that matters relative to the previous
trusteeship of the executor were properly withdrawn from the
jury, as having been adjudicated in the domiciliary court.

5. **Probate Court:** NOTICE: HEARING AT SUBSEQUENT TERM WITHOUT
NOTICE. Where parties interested have been duly served with
notice by a court having jurisdiction in a sister state to appear
and show cause at a time stated why the final report of an exe-
cutor should not be allowed and settled, such court having juris-
diction of person and subject matter, a properly authenticated

transcript of the proceedings had, will not be held inadmissible in the courts of this state because it shows that a hearing was had and a judgment rendered at a subsequent term of such court.

6. **Legacy to A if A Survives C; to B if C Survives A; B Not Entitled to Be Heard Upon Final Accounting of Executor.** Where, by the terms of a will, the minor son of the sole legatee thereunder would take the estate when he arrived at the age of twenty-five years, providing his father survived his mother, and it appears that at the time of the trial the parents of the minor were both living, *held*, that such minor child did not have such an interest in the estate as qualified him, under the provisions of section 283 of chapter 23, Compiled Statutes, to file objections to the allowance of the final report of the executor.

7. **Objections of B, a Minor, Stricken; A, Mother of B, Files Same Objections: PARENT REPRESENTS MINOR: ERROR WITHOUT PREJUDICE.** Where the objections of such minor are stricken, and the mother of the minor, who is the legatee, is permitted to and does file the same and other objections, upon which the cause is tried and determined, the decision being affirmed on error to this court, the rule of the trial court in striking such objections, if error, would be without prejudice.

8. **Executor: INVENTORY: ACCOUNTING.** An ancillary executor in Nebraska, at the instance of the probate judge, procured and filed with his report an inventory of certain household goods, which had been owned by the testatrix, but which had been given away by her before her death, and of which the executor never obtained possession; *held*, that the executor could not be charged with the value of such goods.

9. **Rent of Real Estate as a Charge Against Executor.** Under the law of this state, an executor can not be charged with the rent of real estate until it becomes necessary or proper to reduce such real estate to actual possession for the protection of the creditors of such estate, or until the executor is ordered so to do by the proper court.

10. **Instruction.** Instructions examined, and *held* properly given.

11. **Evidence.** Evidence examined, and *held* sufficient to sustain verdict and judgment.

ERROR to the district court for Douglas county: WILLARD W. SLABAUGH, DISTRICT JUDGE. *Affirmed.*

*George G. Bowman* and *Brome & Burnett*, for plaintiffs in error.

*William F. Vilas* and *Montgomery & Hall*, contra.

KIRKPATRICK, C.

The questions requiring determination in this contro-
versy arise from the following state of facts: Catherine
M. Tusler died in Dane county, Wisconsin, March 22,
1894, leaving a last will and testament executed February
18, 1893. By the terms of this will Dr. Philip Fox was
named as one of the executors, and he, on March 27, 1894,
filed in the county court of Dane county a petition asking
for the probate of this will. On May 1, 1894, acting on this
petition, the county court of Dane county appointed Dr.
Fox executor, issuing to him letters testamentary. At the
time of her death, Mrs. Tusler possessed some real estate
and personal property, the former consisting, among other
properties, of a residence in Omaha, the latter consisting
of a herd of horses and mules, and other personal effects
connected with the management of the same, which some
time prior to her death had been kept on a ranch in Chey-
enne county, this state. Some time in 1892 Mrs. Tusler,
then in Nebraska, seems to have had some difficulties in
the management of her personal property, and she there-
upon returned to Wisconsin, shortly afterwards entering
into an agreement with Dr. Fox, whereby he became her
trustee touching personal property then owned by her;
Mrs. Tusler giving to Dr. Fox a bill of sale of such prop-
erty, and a power of attorney authorizing its control and
management. There is much evidence in the record touch-
ing upon what Dr. Fox did by virtue of this power of at-
torney and under his character as Mrs. Tusler's trustee
during her lifetime; but in the view we take of the record
and the law, it would serve no useful purpose to set out
this evidence with any endeavor at detailed accuracy. On
April 7, 1897, Dr. Fox filed in the county court of Dane
county his first report as executor, giving therein a de-
tailed account of his doings as executor, annexing a sched-
ule showing property coming into his hands as executor
and his manner of dealing therewith, the amounts received

therefor and disbursed therefrom. To this report was also appended an account of Dr. Fox's transactions in the capacity of Mrs. Tusler's trustee during her lifetime. In this report he accounts to the Dane county court for all property coming into his hands, or of which he had knowledge, whether in Wisconsin, Wyoming or Nebraska, evidently upon the assumption that the domiciliary court had jurisdiction of all property with which he, as Mrs. Tusler's executor, was charged. He filed subsequent reports to the same court on February 5, 1898, and July 8, 1898; his resignation as executor on July 8, 1898; and on December 22, 1898, a petition for settlement and allowance of his accounts and discharge as executor. On May 4, 1899, the county court of Dane county, after notice, approved the accounts of Dr. Fox, and discharged him as executor.

Dr. Fox, by proceedings instituted May 12, 1894, procured the issuance to him of ancillary letters of administration from the county court of Douglas county, to wit, on July 31, 1894. The real estate belonging to Mrs. Tusler's estate situated in Omaha, already referred to, consisted of a house and lot, in which Mrs. Tusler, prior to her death, had resided with her family. There is testimony to the effect that prior to her daughter's marriage, Mrs. Tusler made her daughter a present of the furniture in this residence. On January 23, 1895, the county court issued a warrant for an inventory and appraisement of the Omaha property. This was accordingly had, and gives in detail the articles of furniture and the value thereof, and a description of the premises on which the residence was located.

On May 20, 1895, Montgomery & Hall, a firm of attorneys, filed with the county court of Douglas county a claim against the estate for legal services rendered to Mrs. Tusler subsequent to October 23, 1892, amounting to $345.79. A claim for $2,595 was filed by G. D. Meiklejohn July 6, 1895. The allowance of these claims was resisted, but judgment was finally rendered by the county court, giving Mont-

gomery & Hall $345.79, and to Meiklejohn $2,000. On April 8, 1898, the executor's report theretofore filed in the Dané county court was by Dr. Fox filed in the Douglas county court, and on February 8, 1898, there was filed in the Douglas county court a subsequent report theretofore filed by Dr. Fox in Dane county.

An appeal had been prosecuted from the allowance of the Meiklejohn claim to the district court, but seems subsequently to have been dismissed, and it appears that Meiklejohn thereupon, and some time in April, 1899, becoming dissatisfied with the time consumed by the executor in making due payment of the sums owing to him, began to press the matter, filing a petition to require Dr. Fox to show cause why the claim should not be paid, and asking for the removal of Dr. Fox as executor, and for the appointment of an administrator *de bonis non*. On December 29, 1899, the county court, having under consideration the application of Paxton C. Stoddart, a minor, by his next friend, Bowman, to have the judgments theretofore rendered against the estate set aside, and also the petition of Meiklejohn for the removal of the executor, dismissed Paxton C. Stoddart's application, and found that there was sufficient property of the estate to pay the claim of Meiklejohn, and that the executor failed and refused to pay the same. It was adjudged that the resignation of Dr. Fox as executor, theretofore filed in the county court of Douglas county, be not accepted; that Fox be removed from his office, his letters revoked and twenty days be given him in which to file a full, complete and correct statement of his proceedings as executor of all property, wherever located; and that he and all other persons interested in the estate appear in the Douglas county court January 30, 1900, when an examination and settlement of the accounts of Dr. Fox would be had, and such further orders made as might appear proper. In the same judgment the county court of Douglas county adjudged, that letters of administration *de bonis non* with will annexed should be granted; Nelson H. Tunnicliff, plaintiff in error

herein, being appointed such administrator. He qualified, giving bond in the sum of $1,000, conditioned as required by law.

On January 16, 1900, Dr. Fox filed, in compliance with the order of the county court, a final report as executor, making reference to the reports theretofore filed by him in the Dane county court, and to his discharge as executor by that court, and in this report he claimed that the estate was indebted to him in the sum of about $800. To the allowance of this report objections were filed by Tunnicliff, administrator *de bonis non,* by Meiklejohn, Stella M. Stoddart and by Paxton C. Stoddart, a minor. On July 26, 1900, judgment was rendered by the county court in favor of the estate and against Dr. Fox for $39,881.47. Included in this judgment was an item of $2,600 for rent of Omaha real estate, and to that portion of the judgment Stella M. Stoddart and Paxton C. Stoddart each duly excepted. The cause was thereupon removed to the district court for Douglas county, and trial was had to the court and a jury, resulting in a verdict of $445.55, for Fox, and against Tunnicliff, administrator *de bonis non.* By order of court a remittitur of $445 was filed by Dr. Fox, and this proceeding is prosecuted from the judgment for 55 cents in favor of the former executor; Tunnicliff, Meiklejohn and Mrs. Stoddart being plaintiffs in error.

Many errors are assigned by each of plaintiffs in error, but all questions presented requiring consideration may be summarized under the following heads: (1) The court erred in giving instructions numbered 1, 4, 5 and 8. (2) The court erred in admitting in evidence the transcript of the judgment of the county court of Dane county, Wisconsin. (3) The court erred in striking from the files objections to the allowance of the report of executor Fox filed by Paxton C. Stoddart. (4) The verdict is contrary to and not sustained by the evidence.

The contention with respect to instruction No. 1 is that it is confusing and misleading, in that it does not define the meaning of the term "legal *situs,*" used therein regard-

ing certain personal property with which Dr. Fox as executor was sought to be charged. In our view, it is not possible that the use of this term in the instruction, considering that instruction independently of others given, resulted in confusing or misleading the jury. The instruction is, however, preliminary in its nature, and must be considered in connection with those that follow. The term, "legal *situs*" occurs twice therein, and in the second instance in the following sentence, "whose *situs* was in Nebraska, and as herein instructed." The natural effect of this language was to direct attention to following instructions upon any question which might be left unexplained. Accordingly, by reference to instructions numbered 4, 5, 6 and 8, ample explanatory language of the term "legal *situs*" is found. We are of opinion that the first contention of plaintiffs in error must be overruled.

Instruction No. 4 is said to be objectionable because it charges, in substance, that Dr. Fox, as ancillary executor under appointment in Douglas county, was not chargeable with and was not required to answer to the Douglas county court for property which was not kept, and did not have its home for any length of time, in Nebraska, but which was kept in Wyoming, and was in Nebraska only temporarily, in transit, for sale or other purposes. The instruction seems to us applicable to the evidence in the case, and correctly to state the law. The theory of some of plaintiffs in error is that, because one C. C. Nelson, who was agent for Dr. Fox in the care of the horses, and who had charge of the horses and other ranch property in the state of Wyoming, resided for a portion of the time upon his homestead across the line within Nebraska, this would fix the *situs* of such property in Nebraska. We are not able to conceive how the fact of the agent's residence can be available in determining the legal *situs* of the personal property which was the subject of his agency. That Nelson was a citizen of Nebraska sheds little, if any, light upon the question whether the property of this estate was subject to the jurisdiction of our state courts. Nelson's testimony

is in the record, from which it appears that, during the entire period of Dr. Fox's Nebraska executorship, no part of the ranch property or stock was brought from Wyoming into Nebraska, except certain horses which were in transit, being *en route* to the St. Louis market. These horses were driven to the old ranch in Cheyenne county, this state, and from there to Sidney, where they were loaded on cars and shipped to the market. It was claimed that this was done because Sidney was a more desirable shipping place than any available point in Wyoming. A finding that these horses were in Nebraska only for purposes of transit is, we think, sufficiently sustained. The evidence discloses that the stock and ranch property were removed from Cheyenne county into Wyoming apparently for the reason that the herd laws of Nebraska were unfavorable to the care of a large number of horses and mules; that a substantial stock fence, not far from the Nebraska line, running north and south, had been constructed and maintained; and that horses and other stock grazing in Wyoming were thereby prevented from crossing the state line.

Mrs. Tusler resided in Dane county, Wisconsin, where also resided Dr. Fox, who seems to have been related to her as cousin. It was in the county court of this county that Dr. Fox qualified as executor under the terms of Mrs. Tusler's will. It was therefore proper for him to account to that court for property coming into his control or possession in Wyoming.

Under this state of the record, we can not see that the instruction under consideration was inapplicable to the issues, or incorrectly stated the law. Manifestly, Dr. Fox, as Nebraska executor, would not be chargeable with property whose legal *situs* was in Wyoming, and for which he had accounted to the court of his domiciliary executorship.

Instruction No. 5 is assailed on the ground that it assumes the existence of property having a legal *situs* in Wyoming. We are convinced that the instruction is not objectionable for this reason, if it is considered in con-

nection with others given, as it should be. The jury were by other instructions told to determine the question of the *situs* of the property. This instruction was supplementary, in that it laid down the rule as to property in Wyoming, and should be read as if it contained the words, "If you find that there was property in Wyoming." The rule that if instructions as a whole correctly submit the issues and state the law, error can not be predicated thereon, is in *Chicago, B. & Q. R. Co. v. Oyster,* 58 Neb. 13, said to be settled beyond the necessity of citing authority.

However, the record, in our view, contains testimony from which the inference is inevitable that some property did have its home in Wyoming. While the court in its charge ought not to assume the existence of a fact in issue, yet, if the evidence as to such fact is clear and decisive, an instruction assuming its existence will not warrant reversal. *Gran v. Houston,* 45 Neb. 813, 815.

The giving of instruction 8 is assigned as error on the ground that by it the report of Dr. Fox, as Mrs. Tusler's trustee, made to the Dane county court, was withdrawn from the jury. The record discloses that some years prior to Mrs. Tusler's death she gave to Dr. Fox a bill of sale of her personal property, together with a power of attorney, and that they executed an agreement by which Dr. Fox became her trustee in the management of her personal estate. Dr. Fox continued to act in this capacity until Mrs. Tusler's death. As already indicated, he thereupon qualified as executor, and in making his report as such to the county court of Dane county he included a report of his doings, and the property coming into his control and possession as trustee. This report, both as to his executorship and his trusteeship, was allowed and approved by the Dane county court. We do not think it can be seriously questioned that the Dane county court had exclusive jurisdiction of Dr. Fox as trustee, and that, as to matters adjudicated under the trusteeship, the Nebraska court would be without jurisdiction. It follows

that jurisdiction of the latter court would only attach to the Nebraska executorship of Dr. Fox.

Another assignment is that the court erred in admitting in evidence a transcript of the judgment of the Dane county court settling and allowing the reports of Dr. Fox as executor, and discharging him and his sureties from liability. The basis of this contention is that the order of the Dane county court fixes the time for the hearing of the application of the executor for a final settlement of his accounts and his discharge on the first Tuesday in February, 1899, or as soon thereafter as the matter could be heard, whereas the judgment approving his accounts and discharging him was not entered until the May, 1899, term of that court. It can hardly be said that the county court of Dane county, having jurisdiction of person and subject matter, and proper notice being given, lost jurisdiction by reason of the fact that the cause seems not to have been reached for trial and determination until some two months later than the time fixed in the notice. Parties interested, being served with notice to appear, would doubtless be required to take notice of any subsequent action of the court. There would be more .point to this contention if it appeared that judgment was rendered prior to the date fixed by the notice for hearing.

It is not made to appear what the law of Wisconsin is relative to notice of the final settlement of accounts of an executor or administrator. The law in that regard ordinarily would be presumed to be the same as in our own state. But as a well defined exception to this general rule, it has been many times held that courts of sister states will be presumed to possess the powers which they appear to have exercised, unless the contrary is made to appear, and that the modes of procedure pursued by them, although differing from the practice established in this state, are authorized by the state in which they act. *Council Bluffs Savings Bank v. Griswold,* 50 Neb. 753.

It is contended that the trial court erred in striking from

the files certain objections filed by Paxton C. Stoddart, a minor, to the final report of the executor. Mrs. Tusler's will, among other things, provided that as soon as it could conveniently be done without unnecessary loss, her real and personal estate should be converted into money by her executors; that during the life of Stella M. Stoddart, her daughter, the latter should be paid semi-annually the sum of $900; that on the death of her daughter's husband the entire estate should vest in her absolutely; that if Stella M. Stoddart, having issue, should die before her husband, the proceeds of the estate should be devoted to the education of such issue, and upon their arrival at the age of twenty-five years, it should be divided equally among them; that if Mrs. Stoddart died without issue, the estate should be divided equally between testatrix's brothers and sisters. Paxton C. Stoddart is the minor son of Stella M. Stoddart, and at the time of the trial in the district court was about eight years of age. Section 285, chapter 23, Compiled Statutes (Annotated Statutes, 5150), provides that "every executor or administrator failing to render his account within one year, as required by section two hundred and eighty-two of this chapter, may be cited by such court to render such account upon the application, under oath, of any party interested in the estate." The question accordingly is whether Paxton C. Stoddart has such an interest in the estate as entitles him to be heard on objections to the settlement of the executor's accounts. It will be noticed from the provisions of the will referred to that the interest of Paxton C. Stoddart is, at most, a remote contingency. It is only in the event that the mother should die before her husband that any interest in his favor arises. The provision under which Paxton C. must claim, if at all, is in the language following:

"In case my beloved daughter shall die leaving issue before receiving my estate from said trustees, as hereinbefore for her provided, I will, devise and bequeath all of my said estate to my said executors, to have and to hold the

same in trust for such issue of my said daughter, to be divided between and among such issue share and share alike, the share of each child to be paid to such child when he or she shall arrive at the age of twenty-five years, and in the event of but one child then surviving, such child to have and receive of said trustees all of said estate upon arriving at the age of twenty-five years."

We are of opinion that under this will, Paxton C. Stoddart has not such an interest as is contemplated in the section of the statute cited. *Keene's Appeal,* 60 Pa. St. 504.

But if the law were otherwise, we think the action of the trial court in striking these objections would nevertheless be without prejudice. After this action was taken, the court permitted the mother of Paxton C., Stella M. Stoddart, the legatee under the will, to file objections. This was done, presenting to the court all of the objections of Paxton C. Stoddart, and in addition many others.

Again, section 285, chapter 23, Compiled Statutes (Annotated Statutes, 5150), provides:

"When a new administrator shall be appointed in the place of any former executor or administrator of the same estate, the probate court shall have power, upon the application of such new administrator, to cite such former executor or administrator to render an account of his administration, and such order and decree thereupon as may be proper shall be made by such court, requiring such former executor or administrator to turn over and deliver to such new administrator any estate or effects remaining in the hands of such former executor or administrator unadministered."

In the case at bar, Tunnicliff was appointed administrator *de bonis non,* with will annexed, before Dr. Fox filed his final report; and Tunnicliff duly filed objections to the allowance of such report. It will thus be seen that the identical objections of Paxton C. Stoddart, in addition to others, were presented for consideration and determination, being presented both by Mrs. Stoddart, the mother and natural guardian of the minor, and by the

newly appointed administrator as well. The trial resulted in a decision favorable to Dr. Fox as to the executorship in Nebraska. That decision being herein affirmed, it must be held that the ruling of the trial court striking the objections of Paxton C. Stoddart from the files was without prejudice.

The final contention is that the verdict and judgment are contrary to and not supported by the evidence. This contention is based upon the following grounds: (1) that Dr. Fox should have been charged with the rents of the Omaha real estate from the date of his appointment as executor rather than from the 20th day of May, 1895, when the first claim against the estate was filed; (2) that Dr. Fox should be charged with the value of the household goods in the residence at Omaha, which the testimony shows Mrs. Tusler, during her lifetime, gave to her daughter; and that he should be charged with these goods not because he ever took possession of them, the evidence showing without dispute that he never did, but because, at the request of the county court of Douglas county, he obtained an inventory of the goods and filed it with his report; (3) that Dr. Fox was credited with the payment of certain expenses on account of the ancillary administration, when such payments were in fact made from funds of the estate in his hands, and for the payment of which he had already received credit in the settlement had in the Dane county court.

As to the contention relative to the household goods, it is clearly established by the record that they were presented to Mrs. Stoddart by her mother before the latter's death, some time prior to the occasion of Mrs. Stoddart's marriage, when Mrs. Tusler was preparing to leave Omaha to make her home in Wisconsin. These household goods were never the property of the estate. We can not sanction the proposition that the executor should, under this state of facts, be charged with the value of these goods, solely on the ground that an inventory thereof was embraced in his report under the circumstances indicated.

The trial court instructed the jury that the executor should be charged with the rent of the property from May 20, 1895, the date of the filing of the first claim. Plaintiffs in error say that he should have been charged therewith from July 31, 1894, the date of his appointment as executor in Nebraska. Dr. Fox never obtained possession of this property, and never collected any rent therefrom. Mrs. Stoddart was living in this property when her mother died, and so far as this record discloses, has lived there continuously since, paying no rent. No serious contention is made in briefs that Dr. Fox should have been charged with rent prior to May 20, 1895. We think that if there was error in this instruction, it was favorable to plaintiffs in error. Under our law, the real estate of a decedent belongs to the heirs at law, subject to the claims of creditors of the estate. There is no legal obligation upon the executor to take possession of the real estate until such action may be necessary to protect creditors; at all events not until claims are filed, or until directed so to do by the probate court.

In *Lewon v. Heath*, 53 Neb. 707, 711, this court said:

"If the title passes to and vests in the heirs, as it most certainly does, then the possessory right goes with it, except to the extent it is placed by law in the administrator, which is not exclusively or absolutely, but optionally with him, and for the purposes indicated by statute, and for none other."

And further, in the same case, the court quoted with approval from *Jones v. Billstein*, 28 Wis. 221, 228, as follows:

"As we understand this statute, it gives the personal representative the power to reduce the real estate to his actual possession should he think proper, or should the probate court direct him so to do, but it does not imperatively require him to take possession thereof, and until he does so, the common law right of the heir to the possession remains unimpaired." *Dundas v. Carson*, 27 Neb. 634; *Cooley v. Jansen*, 54 Neb. 33.

The fact that Mrs. Tusler died testate, and that under the will the executor was directed, as soon as it could be done without loss, to sell the real estate and convert it into money and reinvest it, would not change the conclusion reached. Thus it appears that plaintiffs in error were not prejudiced by failure of the court to direct the jury to charge the executor with rents for a longer period than was actually done. A careful examination of the testimony under the instructions given has satisfied us that the jury would have been justified in returning a larger verdict in favor of the executor, charging him with rents as directed, and crediting him with such payments as the evidence authorized. It will serve no good purpose to set out the testimony upon this point.

Finally, as to the insufficiency of the evidence, it is claimed that a large part of the expenditures of the executor concerning his administration in Nebraska had been credited to him in his final settlement in Dane county, thus giving him double credit. This question seems not to have been presented in the court below. It will serve no good purpose to attempt to set out these accounts in detail, and it will not be done. From a careful examination of the evidence we are led to conclude that if the jury gave Dr. Fox credit for all the testimony showed he paid out in and about the ancillary administration, and charged him with only what he received on that account, a verdict would find support in an amount something more in favor of Dr. Fox than the amount for which judgment was entered after remittitur was filed. For the purpose of supporting the judgment, we are bound to assume that the jury allowed Dr. Fox all he was entitled to under the evidence, and viewed in this light, it is shown that the evidence supports the verdict.

It not having been made affirmatively to appear that there is error in the proceedings had, it is recommended that the judgment of the district court be affirmed.

HASTINGS and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.