John L. Carson, Administrator, et al. v. John H. Dundas, Administrator.

Filed February 20, 1894.    No. 5302.

1. **Ejectment:** Pleading: Possession.  In an action of ejectment an answer denying plaintiff's title, averring title in the answering defendant, and alleging that defendant's title had been divested by legal proceedings and a judicial sale, and that the purchaser had been put in possession and defendant ousted, amounts to a disclaimer of title and a denial of possession.

2. ———: Adverse Possession: Purchaser at Judicial Sale. Where, in an action of ejectment, title has been adjudicated in the plaintiff, but the defendant in possession decreed to have a lien upon the land and the land ordered sold to satisfy it, the purchaser at a sale under such decree cannot, in a subsequent action of ejectment against him, tack the prior possession of the lienors to his own possession, subsequent to the sale, for the purpose of establishing a title by adverse possession against another who claims under the same source of title as the plaintiff in the action where the sale was had.

3. ———: Purchaser at Judicial Sale: Liens.  The purchaser at such a sale takes the title of the plaintiff in the action, in whom title was decreed, freed, however, from the lien to satisfy which the sale was made.

4. **Effect of Tax Sales.**  A sale to satisfy tax liens, when the action was brought *in personam* and not against the land itself, passes only the title of the parties to the action and their privies in estate.  It does not divest the title of strangers.

5. **Ejectment:** Administrators.  An administrator may, during the period of administration, maintain ejectment against the grantees of his decedent's heirs.  His possessory interest under chapter 23, section 202, Compiled Statutes, is sufficient to sustain such action.

6. ———: Evidence.  When both plaintiff and defendant claim title from a common source, evidence of the derivation of title antecedent to that common source is immaterial.

7. ———: Proof of Plaintiff's Title.  The plaintiff in ejectment need not prove title as against the whole world.  It is sufficient if he prove a title good as against the defendant.

ERROR from the district court of Nemaha county. Tried below before APPELGET, J.

*George W. Covell* and *Robert W. Patrick,* for plaintiffs in error.

*E. W. Thomas* and *W. H. Kelligar, contra.*

IRVINE, C.

Dundas brought this action in ejectment to recover the northwest quarter and the northeast quarter of section 4, township 4, range 14, in Nemaha county. The original defendants were John L. Carson, administrator of the estate of Matthew A. Handley, deceased, McFarland Campbell, and Albert Gillen. In his petition Dundas alleged that Peter B. Borst died intestate in the state of Virginia, April 24, 1882, and that he, Dundas, had been appointed administrator of Borst's estate by the county court of Nemaha county, and had qualified as such, and he claimed the land described as such administrator. Afterwards the heirs of Handley, upon their own motion, were made parties defendant. The cause was removed to the United States circuit court, and subsequently remanded to the district court for Nemaha county. After it was remanded the district court sustained a demurrer to the petition, which went to the jurisdiction of the court and the capacity of the plaintiff to maintain the action. A judgment of dismissal was entered and the case brought to this court, where the judgment of the district court was reversed, this court holding (*Dundas v. Carson,* 27 Neb., 634) that an administrator may maintain ejectment for the recovery of real property for the necessary purposes of administration. That rule thus became the law of the case. After the case was remanded, the administrator and heirs of Handley filed an answer denying plaintiff's title, averring title in themselves by adverse possession, and further averring that

Carson v. Dundas.

since the commencement of the action all of the premises in controversy had been sold under a decree of the United States circuit court to Henry Harmon, the sale confirmed, a deed made, and the answering defendants evicted by the marshal under an order of the court.

At this point the case may be briefly disposed of so far as it concerns Handley's administrator and heirs who are among the plaintiffs in error. Their answer amounted to a disclaimer of title. It was, in substance, a denial of plaintiff's title and an averment of title in themselves by adverse possession, and then an averment that that title had been divested by judicial sale and vested in Harmon thereby; in other words, they pleaded that they no longer had title and that they were no longer in possession, and this removed all issues in the case except those based upon plaintiff's count for rents and profits. Upon these issues there was no finding or judgment against Handley's heirs or administrator. They have nothing whatever to complain of here.

Immediately after the cause was remanded Henry Harmon and John N. H. Patrick applied to be made parties defendant, and their application being sustained, filed separate answers.

Harmon, after specific denials, amounting, in effect, to a general denial of the allegations of the petition, averred title by adverse possession in himself of the northwest quarter. Then he averred conveyances of all the land in controversy from the widow and heirs of Peter Borst to John W. Borst, one of those heirs. The widow was also Borst's administratrix in Virginia, the place of his domicile. Harmon's answer then alleged that in 1885 John W. Borst brought an action in ejectment in the circuit court of the United States against Handley's administrator and heirs to recover said land; that all the defendants answered, and that it was in that action determined that John W. Borst was entitled to possession, and that the defend-

ants had a lien upon the land for $2,700, for taxes paid, and because of the ownership of a judgment which was a. lien upon the land, and that if said lien should not be paid within twenty days the land was ordered sold to satisfy it; that John W. Borst did not pay the lien; that the land was sold under order of the court to Harmon, the sale confirmed, and a deed made and delivered to Harmon, who was put in possession on January 18, 1888.

The answer of Patrick was similar to that of Harmon, except that it averred a conveyance of the northeast quarter by Harmon to Patrick, and asserted title in Patrick to that quarter.

A jury was waived and the cause tried to the court, which found title to be in the estate of Peter B. Borst, subject to the amount of the judgment of the United States circuit court. It subrogated Harmon and Patrick to the lien of Handley's estate, and ordered possession to be given to Borst's administrator, upon the condition precedent, however, that he should first pay to Harmon on account of the northwest quarter one-half of the lien decreed by the federal court, together with interest, and less "the rents and profits of said land for four years, amounting to $894; and to Patrick, one-half of said lien, with interest, less the rents and profits of the northeast quarter for four years, amounting to $620." Both Harmon and Patrick prosecute error.

Both Harmon and Patrick claim title under the proceedings in the federal court, which was proved substantially as alleged in their answer. They have no other paper title. The action in the federal court was by John W. Borst, who had the title of Peter Borst's widow and heirs. The administrator and heirs of Handley were all parties to that action and were bound by the decree. The decree in that case awarded possession to John W. Borst, and, in effect, though not in express terms, found the title to be in him as against Handley's estate. The sale made under the decree, in pursuance of that portion of it establishing a lien in

favor of the Handley estate, vested in Harmon, and subsequently by his conveyance of a portion of the land to Patrick, in the latter, all the title and interest of the parties to the federal case, and no more; that is, it vested in Harmon and Patrick the title of Peter Borst's heirs and the interest of Handley's heirs and administrator; but Borst's administrator was not a party to that action, and such interest as he may have had in the land was not bound by that decree nor divested by that sale.

Harmon and Patrick pleaded adverse possession and endeavored to tack to their own possession, subsequent to the judicial sale, the possession of Handley and his heirs prior thereto. They cannot so unite these possessions. Their title is derived through the judicial sale in pursuance of the decree of the federal court. That decree adjudicated title in Borst's heirs, or in their grantee, and against Handley's representatives and heirs. What they took was the Borst title so adjudicated, with the Handley lien discharged and satisfied by the sale. Claiming under those proceedings, they cannot be heard to say that they claim under the Handley title. They claim no conveyances from the Handleys, and there is no privity between them and the Handleys.

It is contended that the Handley lien being for the most part for taxes, it was superior to all other liens or claims, and that a sale therefor passed the absolute title to the land regardless of the parties to the action. This is not true. The proceedings were not *in rem*, but *in personam*. The decree bound the parties to the action and their privies, but no others, and the sale and deed thereunder vested in the purchasers only such estate as John W. Borst had (Code of Civil Procedure, secs. 499, 500), with the additional features that the decree had, as against Borst, conclusively terminated the Handley claim, and the sale satisfied the Handley lien. Regarded as a proceeding by the Handleys to foreclose a tax lien, the sale only vested in the pur-

chasers the title of the adverse party to the action, the proceeding being against the owner and not against the land itself. (Comp. Stats., ch. 77, art. 5, sec. 6.)

The case, then, resolves itself to this: Harmon and Patrick are the privies in estate of John W. Borst, and are entitled to the benefit of the adjudication of title in favor of Borst against the Handleys. But such rights as Peter Borst's administrator had against his heirs have not been adjudicated, and the case, by the proceedings subsequent to the former judgment of this court therein, became substantially an action in ejectment by Peter Borst's administrator against the representatives of his heirs. It is true that Peter Borst's administratrix, appointed in the state of his domicile, was a party to the action in the federal court, but such rights as the personal representative had in the land were possessed by the administrator appointed by the courts of this state and not by one appointed in the state of the decedent's domicile. It is not probable that that proposition would be controverted, and no argument is required for its support.

We are thus brought to the consideration of a single question: May an administrator maintain ejectment against the heirs of the decedent in possession? The former opinion in this case, 27 Neb., 634, decides that an administrator may maintain ejectment against strangers. Compiled Statutes, chapter 23, section 202, provide: "The executor or administrator shall have a right to the possession of all the real as well as personal estate of the deceased, and may receive the rents, issues, and profits of the real estate, until the estate shall have been settled, or until delivered over, by order of the probate court, to the heirs or devisees, and shall keep in good, tenantable repair, all houses, buildings, and fences thereon which are under his control." There is no special procedure provided for an administrator's enforcing the right so given. The supreme court of California, construing a statute substantially similar to our own,

has held, in a case cited by Judge Cobb in the former opinion in this case, that during administration an administrator may recover possession from the grantee of the heirs in an action of ejectment. The case is in all material aspects in point and we are entirely satisfied with the reasoning and conclusions of that court, which are as follows:

"It is contended on the part of the appellant that plaintiff, as administratrix, is entitled to the possession of the premises of the deceased during and for the purposes of administration. On the other hand, the respondents insist that the defendants, claiming under the devisee in the will, are entitled to the possession; that before the administratrix can recover, she must allege and show that the possession is required by her for the purposes of administration, viz., to pay debts, etc.

"We are of opinion that the court below erred in granting the new trial. During the administration, and until distribution, partial or final, the executor or administrator is entitled to have the possession of the property left by the deceased. The statute authorizes an heir to recover possession as against third persons, but not as against the executor or administrator. The district court, in an action of ejectment, could not try and determine whether there will be debts to be paid, or expenses of administration, or past sickness, or funeral charges. The consideration of those matters is exclusively within the jurisdiction of the probate court. The executor or administrator cannot be kept out of the property until the probate court shall have settled his accounts, and the debts and expenses have been ascertained, and then, and not till then, have his action to recover possession; but immediately upon the issuance of his letters, he is entitled to have the possession of the estate of deceased, to the end that the rents and profits, and, if need be, the proceeds of the property itself, be applied to the payment of debts and charges, and the balance, if any, distributed, and by him delivered to the parties entitled.

The grant of letters by the probate court is conclusive upon other courts as to the necessity for administration." (*Page v. Tucker*, 54 Cal., 122.)

Errors are assigned upon the admission in evidence of certain records and instruments through which title was traced to Peter Borst. This evidence was all immaterial, and, the trial being without a jury, error cannot be predicated upon its admission. The pleadings, as well as the evidence, show that both sides claimed under Peter Borst, the plaintiff, as his administrator; Harmon and Patrick, through the judicial sale. Claiming title from a common source, it was not necessary for the plaintiff to prove title antecedent to that common source. A party is estopped from denying a title under which he claims to derive his own right to the premises. (*Barton v. Erickson*, 14 Neb., 164; *Gaines v. New Orleans*, 6 Wall. [U. S.], 715; *Merchants Bank of St. Louis v. Harrison*, 39 Mo., 433.) This rule holds good where the defendant traces title through a sheriff's sale. (*Feimster v. McRorie*, 1 Jones' Law [N. Car.], 547.) The rule requiring the plaintiff in ejectment to recover on the strength of his own title does not mean that he must show a good title against all the world. It is sufficient if he shows a right to recover against the defendant. (*Gaines v. New Orleans, supra; Garrett v. Lyle*, 27 Ala., 589.) The title is shown to be in Harmon and Patrick, subject, however, to the possessory interest of the administrator, which is sufficient to sustain the action.

JUDGMENT AFFIRMED.