ENOS T. HUGHES, GUARDIAN, ET AL., APPELLEES, .V. MARGA-
RET LANGDON, DEFENDANT: DANIEL KELLY ET AL.,
APPELLANTS.

FILED JANUARY 15, 1924. No. 22563.

1. **Limitation of Actions:** GUARDIAN AND WARD: ACTION ON BOND. Where a ward dies, his guardian is "discharged" within the purview of section 8515, Comp. St. 1922, which provides that no action shall be maintained against the sureties on the guardian's bond unless it be commenced within four years from the time the guardian is discharged.

Hughes v. Langdon.

2. **Descent and Distribution:** ACTION BY HEIR. Where there are no debts owing by an estate of a decedent, and nothing remains but the formal statutory proceedings to settle the estate, and there is no administrator, or the administrator refuses to bring an action, the only heir is entitled to bring the action in his own name, or it may be brought in the name of his guardian.

3. **Guardian and Ward:** ACTION ON GUARDIAN'S BOND: LIMITATIONS. When a person under guardianship dies leaving as his only heirs at law his widow, who is the guardian, and a minor son, and where the guardian has come into possession of money belonging to the ward, and on the termination of the guardianship makes no accounting of the trust, and where 11 years after the death of the ward the guardian is appointed administratrix of her ward's estate, and in the estate matter it is judicially determined that the widow and the minor son are the only heirs at law and entitled to share equally in the estate, and where the administratrix in fraud of the son's rights fails to require an accounting of her doings as guardian, and as guardian fails to make an accounting, and as administratrix is discharged, and where the amount due to the son in the guardianship proceeding is determined by the court, *held*, that the son is "the person entitled to bring the action" as that term is used in the exception clause of section 8515, Comp. St. 1922, providing that, if at the time of the discharge the person entitled to bring the action be out of the state, or under any legal disability to sue, the action may be commenced at any time within five years after the return of such person to the state, or after the removal of such disability. Also *held*, that where the son was under legal disability the cause of action in his behalf against the sureties upon the guardian's bond is not barred by the statute of limitations until five years after the disability is removed.

4. ———: ACCOUNTING: DECREE: CONCLUSIVE ON SURETY. "The order and decree of the county court as to the amount due from the guardian to his ward upon the final accounting and settlement of the guardian is final and conclusive upon the sureties upon the guardian's bond." *Langdon v. Langdon*, 104 Neb. 619, followed.

5. ———: JUDGMENT AGAINST SURETY. Judgment may not be rendered against the sureties on a guardian's bond in excess of the penalty named in the bond.

APPEAL from the district court for Cass county: JAMES T. BEGLEY, JUDGE. *Affirmed on condition.*

*Doyle & Doyle, Halligan, Beatty & Halligan* and *Hall, Cline & Williams*, for appellants.

*Anthony E. Langdon* and *William R. Patrick,* contra.

Heard before LETTON, ROSE, DEAN, DAY and GOOD, JJ., REDICK, District Judge.

DAY, J.

Enos T. Hughes, as guardian of the estate of William K. Langdon, incompetent, and also in his capacity as administrator *de bonis non* of the estate of Michael J. Langdon, deceased, brought this action on a guardian's bond executed by Margaret Langdon, guardian of the estate of her insane husband, Michael J. Langdon. Daniel Kelly and Michael C. Kelly, brothers of Margaret Langdon, signed the bond as sureties. Process was served on the two Kellys only. Pending the action, defendant Michael C. Kelly died, and the action was revived against him in the name of his administrator, the First Trust Company of Lincoln, Nebraska. The trial resulted in a judgment in favor of the plaintiffs and against both defendants, for $14,741.58. Defendants appeal.

The record discloses the following facts: On April 10, 1888, Margaret Langdon was duly appointed guardian of the estate of her insane husband, Michael J. Langdon. On the same day she executed and delivered to the county judge her bond as such guardian in the penal sum of $12,000, which was signed by her brothers, Daniel and Michael C. Kelly, as sureties. She entered upon the duties as such guardian, and continued to act as such until the death of her husband, which occurred April 22, 1891. At the time of his death Michael J. Langdon left surviving him, as his heirs at law, his widow, Margaret Langdon, and a minor son, William K. Langdon, about 5½ years of age. Nothing was done concerning the administration of the estate of Michael J. Langdon until December 12, 1902, at which time Margaret Langdon was duly appointed administratrix of

the estate.   The record fails to show what, if anything, Margaret Langdon did as administratrix.   It does appear, however, that at a later period she was discharged as administratrix.   Shortly thereafter the mother and son moved to Oklahoma, while the son was still a minor; the son never returning to the state of Nebraska until 1915.   On June 5, 1907, William K. Langdon, who was then about 21 years and 9 months of age, was declared insane, and was sent to the state hospital at Nevada, Missouri, where he remained until April 22, 1915.   During this period he was not confined entirely within the institution, but was under its supervision and control.   After being released he returned to Nebraska in August, 1915, and filed a motion in the matter of the guardianship of his father, Michael J. Langdon, asking that his mother, the guardian, be cited to appear in court and render an accounting of her doings as such guardian.   A citation was duly issued by the county court of Lancaster county, in which the guardianship was pending.   On March 25, 1916, upon a full hearing, that court found that, after deducting all proper charges in the guardianship, there remained in the hands of the guardian, and unaccounted for, $7,790.26, which with interest from the date of the death of the ward, Michael J. Langdon, amounted to $21,377.57.   The court found that one-half of this sum belonged to the widow of Michael J. Langdon, and the other half to William K. Langdon, the son.   Shortly thereafter William K. Langdon was again committed to the state hospital.   In May, 1916, Patrick J. Langdon was appointed guardian of the estate of William K. Langdon, incompetent.   Patrick J. Langdon died soon after instituting the present action, and Enos T. Hughes was appointed guardian in his stead.   The record also shows that on proper application to the county court the discharge of Margaret Langdon as administratrix of the estate of Michael J. Langdon, deceased, was set aside, and on December 15, 1915, Patrick J. Langdon was appointed administrator *de bonis non.*   Upon the death of Patrick J. Lang-

don, Enos T. Hughes was duly appointed administrator *de bonis non,* who has since prosecuted this action commenced by Patrick J. Langdon as guardian and as administrator *de bonis non.*

The main question presented by this record is whether the action was barred by the statute of limitations.

Defendants urge that the statute of limitations began to run April 22, 1891, the date of the death of Michael J. Langdon, and as the action was not commenced until September 3, 1918, the four-year statute of limitations applicable in such cases had long since run. In support of their contention the defendants rely upon section 8515, Comp. St. 1922, which is as follows:

"No action shall be maintained against the sureties in any bond given by the guardian unless it be commenced within four years from the time when the guardian shall have been discharged: Provided, if at the time of such discharge the person entitled to bring such action shall be out of the state, or under any legal disability to sue, the action may be commenced at any time within five years after the return of such person to the state, or after such disability shall be removed."

It will be noted that this section of the statute contains two clauses, the first announcing the general rule, and the second the exception. The first clause in clear and unmistakable language declares that no suit may be maintained against the sureties on a guardian's bond unless commenced within four years from the time of the discharge of such guardian. The question is at once suggested, when is the guardian deemed to be discharged within the meaning of the term "discharge," as used in the statute? By the great weight of authority in states having similar statutes, the guardian is discharged by the happening of any event by which the guardianship is brought to a close. Thus, the removal, resignation, or death of the guardian, the death of the ward, the arrival of the minor of age, and perhaps other events, will operate to discharge the guardian. *Loring v. Allme,* 9 Cush. (Mass.) 68; *Probate Judge v.*

*Stevenson,* 55 Mich. 320; *Paine v. Jones,* 93 Wis. 70; *Berkin v. Marsh,* 18 Mont. 152.

In construing this statute this court in *Goble v. Simeral,* 67 Neb. 276, held that a guardian is discharged within the purview of the section when the ward becomes of age. It was also held that the statute of limitations in actions upon guardians' bonds begins to run from the date of the discharge of the guardian, and not from the time when a cause of action has accrued upon final settlement of the guardian's accounts. The rather anomalous situation of the bar of the statute running in favor of the sureties, before a cause of action accrues, is considered in a satisfactory manner in the *Goble* case.

We come now to consider the exception clause of the statute, in its relation to the facts of this case. That clause provides that, if at the time of the discharge of the guardian the party entitled to bring the action be out of the state, or be under any legal disability, the action may be commenced at any time within five years after the return of such person to the state, or after the disability is removed.

Who is the person entitled to bring the action, as that term is used in the statute? Ordinarily the person entitled to bring an action is he who is entitled to the fruits of the litigation. When Michael J. Langdon died, his property, subject to the payment of debts, descended to his heirs at law. The widow, who had been his guardian, and the minor son were the only heirs. She was in possession of a sum of money as guardian which in law, there being no debts, belonged to herself and her son in equal shares. It was her duty as guardian to make a report of her trust, and to turn it over, at least the part belonging to the son, to the proper persons. If an administrator had been appointed, he would have been a proper person to receive the money. None was appointed, or at least not until 11 years after the ward's death; but the administrator was not the only proper person to receive this money, or to bring an action for its recovery. When all the debts of an estate are paid, and nothing remains to be done except the formal

statutory proceedings to settle the estate, the only heir may bring an action in equity to recover assets of the estate. And this is true when there is an administrator who refuses to bring the action. *Prusa v. Everett,* 78 Neb. 251 (opinion on rehearing).

In the case before us, no administrator was appointed until 1902, at which time the widow was named as administratrix. She made no accounting to herself as administratrix of her trust as guardian. While the record is not entirely clear, it appears that her actions as administratrix were purely nominal for the purpose of fixing heirship, the county court decreeing that the heirs were the widow and the minor son. When it was sought to open up the estate in 1915, the county court found that the administratrix had fraudulently and wrongfully failed to make a full and true report as administratrix, and the discharge of the administratrix was set aside, and an administrator *de bonis non* appointed. Under the circumstances presented by the record, we hold that William K. Langdon was the person entitled to bring the action, in so far as it affected the share of the estate coming to him in the hands of the guardian. The county court found on the citation of the guardian that she had $10,688.78 in her hands belonging to William K. Langdon. If it be considered that William K. Langdon was the "party entitled to bring the action," what was the reason for the long delay in bringing it? The record shows that while he was a minor he removed to Oklahoma, and soon after becoming of age he was declared insane, sent to a state hospital in Missouri, and remained there until the spring of 1915, returning to Nebraska in August of the same year.

It thus appears that William K. Langdon was under the disability contemplated by the statute, the effect of which was to extend the time for bringing the action. The disability was removed in 1915. The action was commenced in 1918, and is not barred by the statute of limitations.

It is contended by the defendants that the evidence was not sufficient to support the judgment. The record shows,

Hughes v. Langdon.

however, that upon the final accounting and settlement of the guardian's accounts the county court found, as hereinbefore stated, that the guardian had in her hands $10,688.78 belonging to William K. Langdon.

In *Langdon v. Langdon*, 104 Neb. 619, it was held: "The order and decree of the county court as to the amount due from the guardian to his ward upon the final accounting and settlement of the guardian is final and conclusive upon the sureties upon the guardian's bond."

It is also urged by the defendants that they will suffer a great hardship by being required to respond on a bond after the lapse of more than 30 years. The defendants had it in their power, however, to require the guardian to make an account of the trust immediately following the death of the ward. At that time there was coming to the guardian from the estate of Michael J. Langdon sufficient funds to have protected the bondsmen.

As stated before, the judgment against the two sureties was for the sum of $14,741.58. The penalty in the bond given by the defendants was $12,000. It is difficult to see on what theory the judgment could exceed the penalty in the bond. If plaintiffs will remit from the judgment as of the date it was rendered all above $12,000 within 20 days, the judgment will be affirmed. Otherwise, it will be reversed, and the cause remanded for further proceedings.

AFFIRMED ON CONDITION.

The following opinion on motion for rehearing was filed July 18, 1924. *Judgment of district court reversed.*

1. **Syllabus Approved.** Upon rehearing, the proposition of law as stated in the syllabus of the former opinion, *ante*, p. 508, approved.

2. **Limitation of Actions:** ACTION ON GUARDIAN'S BOND: DISABILITY. The legal disability which may be considered in determining whether an action on a guardian's bond is barred by the limitation fixed by section 8515, Comp. St. 1922, is that only which existed at the time of the discharge of the guardian. A disability subsequently arising will not operate to extend the

period for bringing the action beyond the time fixed by the removal of the disability originally existing.

3. ——: ——: ——. In the instant case, the disability shown to exist at the time of discharge of the guardian was that of minority, which was removed upon the minor attaining majority in the year 1906, more than five years prior to the commencement of the action, and hence the action is barred by the statute of limitations.

Heard before LETTON, ROSE, DEAN and DAY, JJ., REDICK and BLACKLEDGE, District Judges.

BLACKLEDGE, District Judge.

This case is before us for a second consideration. An opinion was heretofore adopted which is reported, *ante*, p. 508, and upon motion for rehearing further argument was ordered and we are now to determine the status of the case upon final consideration.

The questions involved depend for their solution upon the construction to be given to the statute which provides the period within which actions may be commenced upon the bond of a guardian, section 8515, Comp. St. 1922, which reads as follows:

"No action shall be maintained against the sureties in any bond given by the guardian unless it be commenced within four years from the time when the guardian shall have been discharged: Provided, if at the time of such discharge the person entitled to bring such action shall be out of the state, or under any legal disability to sue, the action may be commenced at any time within five years after the return of such person to the state, or after such disability shall be removed."

The facts stated in the former opinion need not be here repeated except in so far as they appear necessary to a discussion of the propositions which are reexamined. The transactions which gave rise to this case occurred prior to the death of Michael J. Langdon, which event was on April 22, 1891. At and before his death his wife, Margaret Langdon, was his guardian, and this suit is upon her bond

as such guardian.   Nothing in the way öf administration of the estate of the decedent was had until December 12, 1902, nearly 12 years after the death.

There are three propositions urged for our consideration, which are: First, whether the "discharge" of the guardian contemplated by the statute under consideration is that which may occur upon the filing of his final account and his discharge or removal by the county court, or whether it is the termination of the guardianship which takes place upon the death or arrival at majority of the ward.   There is much discussion and conflict of decision by the different courts upon this proposition.   This court upon a full consideration of the question, in an opinion by a jurist of recognized ability and renown, has held that the discharge, within the meaning of this statute of limitations, takes place upon the termination of the guardianship, and that, as to the sureties, the period of limitation begins to run on such date, and not from the time when the cause of action has accrued upon final settlement or accounting by the guardian.   We think no good would be accomplished by further consideration of the question, and hold that the former opinion in this case was right upon that proposition.   *Goble v. Simeral*, 67 Neb. 276; *Gronna v. Goldammer*, 26 N. Däk. 122, Ann. Cas. 1916A, 165, note 170-183.

Second, that the "person entitled to bring such action" in this case means William K. Langdon, for whose benefit it is alleged this case is prosecuted.·  Appellants contend that the administrator of the estate of the deceased ward is the only person who could maintain the action, and that, therefore, the condition or situation of William K. Langdon, in so far as concerns his absence from the state or legal disability, is immaterial.   The argument would be of governing force if there existed a positive requirement of law ·that in all cases of death of persons under guardianship än administrator should be appointed.   There is no such requirement, and in this case the fact·is that for 12 years next following the death of the ward no administrator was appointed.   True, the administrator, where one has been

appointed, is entitled to sue for and collect the assets of
the estate; yet the position of appellants is, at least in part,
foreclosed by the holding in *Prusa v. Everett* (on rehear-
ing), 78 Neb. 251, to the effect that the heir may sue where
the administrator refuses so to do.  The case of *Cox v.
Yeazel*, 49 Neb. 343, although denying the right to the heir
to sue in that instance, recognizes his right to do so if
there be no demands against his decedent ancestor and
there has been no administration, or the administration
has been closed.  The principle is also recognized by the
decisions in *Cooley v. Jansen*, 54 Neb. 33, to the effect that
the right of the administrator to possession of the property
of the decedent arises, primarily, from its being subject to
the payment of his debts; and in *Schick v. Whitcomb*, 68
Neb. 784, wherein the heir was allowed to maintain a par-
tition action upon the allegation that the proper debts and
charges against the estate had been paid. We hold, under the
facts of this case as stated, and where it is not shown that
there was any debt of the decedent, nor any necessity for
the administration of his estate, and no administrator was
appointed or applied for, that the heir who was entitled to
the proceeds of the demand in question should, in our de-
termination of this question of limitation, be considered the
person entitled to bring the action.

It is plain, of course, that, if none other than the adminis-
trator can sue, the statute of limitations began to run at
least upon the appointment and qualification of such ad-
ministrator, and, being put in motion, continued to run
until its term was complete and the cause became long
since barred.  The second and third administrators would
take  the  business  of  the  estate  in  the  condition
in which it was left by their respective predecessors
in office, the whole administration being considered a con-
tinuous proceeding.  *Trumble v. Williams*, 18 Neb. 144;
*Brown v. Jacobs*, 24 Neb. 712; Comp. St. 1922, sec. 1466.
This disposes of any claim of right by plaintiff herein to
maintain the action in the capacity of administrator *de
bonis non* of Michael J. Langdon.

Considering now, third, the question of the legal disability of William K. Langdon, the proposition urged upon the reargument seems to be somewhat divergent from the theory upon which the case was tried and submitted in the district court. In the former opinion we held that, where the son was under disability, the cause of action in his behalf was not barred by the statute until five years after the disability was removed. This, we think, is a proper statement of the law. The difficulty seems to be in its application to the facts of the case, as to which it now appears that both court and counsel overlooked a material element. In the former submission, appellants grounded their argument largely upon the proposition that none but the administrator could sue, and that the four-year period fixed by the principal clause of the statute under consideration effectively barred the action; while appellee contended that the legal disability of William K. Langdon by reason of nonage, his mental incompetency existing from and after the time when he attained his majority, and his absence from the state, served to bring the action within the terms of the statute. The plaintiff tendered an instruction, the statements of which were incorporated into the third instruction given by the court, to the effect that plaintiff was entitled to recover upon proof of the execution of the bond, and that William K. Langdon had at all times since reaching his majority been mentally incompetent to transact business or have the care and management of his property.

It is said in the former opinion that the disability was removed in 1915, which date would authorize the maintenance of this present action. It is now urged that in order to reach such date there has been a "tacking" of disabilities unauthorized by law, in that the period of insanity or mental incompetency was added to the period of minority; and that the absence from the state is not material to be considered.

We are convinced of the correctness of appellants' position in this regard. The date from which the statute operates, we have held, is of that of the discharge of the guardian

by death of the ward, April 22, 1891. Under the plain terms of the statute, which will admit of no construction, the disability, in order to be effective, must exist "at the time of such discharge." Many courts have held that a disability subsequently arising, even before the removal of the first, will not serve to extend the time beyond the removal of the originally existing disability. *Hogan v. Kurtz*, 94 U. S. 773; *McDonald v. Hovey*, 110 U. S. 619; *Demarest v. Wynkoop*, 3 Johns. Ch. (N. Y.) *129; *Cozzens v. Farnan*, 30 Ohio St. 491; *Roelefsen v. City of Pella*, 121 Ia. 153. It is not disputed that William K. Langdon resided and was within the state at the time of the death of his father. His subsequent absence and return to the state, at whatever time, would be immaterial. He was then also a minor and attained his majority in 1906. In 1907 he was declared insane and committed to a state hospital at Nevada, Missouri, from which insitution he was discharged in 1915. He returned to Nebraska, for a brief period that same year, during which time he instituted in his own name the proceedings in county court which eventually furnished the basis for this suit, which was commenced September 3, 1918. Therefore, the only disability under which he is shown to have stood at the time of the discharge of the guardian was that of minority. This was removed when he became of the age of 21 in the year 1906, and this we find to be the correct date of the removal of his disability as affecting this suit. Such date was more than five years prior to the commencement of this action.

There is some basis in the evidence for the contention that the mental incompetency of William K. Langdon existed for some considerable period prior to the date when he was declared insane in 1907; but there is no issue raised in the pleadings that it existed at the time of the death of his father, and the theory upon which the case was tried, as indicated by the instruction tendered and given, to which reference has been made, was based upon his absence from the state and disability existing "at all times since reaching his majority."

That paragraph of the former opinion. in which it is stated that the disability was removed in 1915 will therefore be withdrawn. The conclusion to which we have come upon further examination of the case, as herein expressed, makes it necessary that the judgment of the trial court be reversed and the cause remanded, which is accordingly done.

REVERSED.