ALBERT J. BLOCHOWITZ, SPECIAL ADMINISTRATOR, APPELLANT, V. FRANK J. BLOCHOWITZ ET AL., APPELLEES.

FILED APRIL 17, 1936. No. 29402.

*John J. Ledwith, Hall, Cline & Williams* and *Perry, Van Pelt & Marti,* for appellant.

*Ginsburg & Ginsburg, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

This is a suit in equity prosecuted by Albert J. Blochowitz as administrator with the will annexed of the estate of Joseph Blochowitz, deceased, to recover from Frank J. Blochowitz, John A. Blochowitz, and George Blochowitz, personal property consisting of securities and mortgages belonging to the estate of Joseph Blochowitz, deceased, and for an accounting of the amounts alleged to be due from these defendants to the estate of plaintiff's decedent. The defendants answered challenging the plaintiff's right of recovery. After the introduction of evidence and hearing on the merits and also on special defenses pleaded, the district court found "generally in favor of the defendants and against the plaintiff" and dismissed the action. The plaintic appeals.

The property involved, at one time owned by Joseph

Blochowitz, has been the subject-matter of three separate actions in this tribunal. Joseph Blochowitz, then a resident of Lancaster county, Nebraska, died on February 20, 1930, leaving as his survivors, four sons, Frank J. Blochowitz, John A. Blochowitz, George Blochowitz, and Albert J. Blochowitz; two daughters, Lena M. Yankton (nee Blocho-witz) and Anna Geistlinger (nee Blochowitz), and also his wife and widow, Rosalia Blochowitz.

It appears that the elder Blochowitz and wife had migrated to the United States in 1880, and purchased the quarter section of land in Lancaster county in 1884, and on which the family thereafter resided. His daughter Lena was married when 18 years of age, and the daughter Anna was married when 15 years of age. These daughters, after their respective marriages, left their parental home with their husbands, and thereafter lived apart from their parents. Under the leadership and direction of the father, the real estate holdings were increased to a total of 640 acres of land in Lancaster county, and certain real estate situated in South Dakota, and in addition certain real estate mortgages and bonds had been purchased from the proceeds of the common toil. About the year 1920, the plaintiff in the instant case left the parental home and control, conducted his business affairs on an individualistic and wholly independent basis, and thereafter ceased to contribute to the family fortune. The defendant sons, Frank J., John A., and George, remained at home, and, under the father's direction, continued to labor in large degree each for the benefit of all. The proceeds of this labor thus performed was invested, by the directions of the father, in real estate and high grade securities. The title to the real estate thus acquired by the joint endeavors was first taken in the name of the father. Commencing prior to 1917, it was the custom of the father to have the bonds, real estate loans, etc., purchased, or as renewed, to be transferred to or renewed in the names of certain of these sons. By 1929 practically all of the personal property thus acquired was held by and in the name of the several sons as their individual property.

On April 4, 1929, Joseph Blochowitz and his wife executed four warranty deeds which were deposited in escrow. These deeds, by their terms, conveyed to each of the sons, Frank J., John A., George, and Albert J., certain of the lands in Lancaster county, in each deed described, subject to certain payments to be made to the grantors and the survivor of them. Also, on April 4, 1929, Joseph Blochowitz formally executed his last will and testament. This instrument contained no formal or express residuary clause. It provided for the payment of the testator's funeral expenses and debts, and a legacy of $500 to each of his two daughters. This will also contained the following: "All of my four sons, Frank J., John, Albert, and George, are entitled to no further part of inheritance as all each and every one of them have received all that they are entitled to." By the judgment of the county court of Lancaster county, made and entered on February 27, 1931, in a proceeding to which all parties to the present litigation were parties, this will was duly admitted to probate, which final order remains in full force and effect.

On March 12, 1930, Albert J. Blochowitz, Lena M. Yankton, and Anna Geistlinger, as plaintiffs, commenced an action in the district court for Lancaster county, against Frank J. Blochowitz, et ux., John A. Blochowitz, George Blochowitz, and Rosalia Blochowitz, the object and prayer of which was that each of the deeds hereinbefore referred to be declared null and void, and be set aside, etc.

The fourth paragraph of this petition is in the following words:

"That said deeds were executed on April 4, 1929, and plaintiffs allege that at the time said deeds were purported to have been made Joseph Blochowitz was 85 years of age and because of his extreme age and the condition of his health he was mentally incompetent to execute such conveyances and that said conveyances were procured by fraud and undue influence, practiced by the defendants John A. Blochowitz, Frank J. Blochowitz and George Blochowitz upon the said Joseph Blochowitz; that for many years prior

to April 4, 1929, and thereafter until his death the defendants John A. Blochowitz and George Blochowitz lived with the said Joseph Blochowitz and said defendants, together with Frank J. Blochowitz, transacted his business and advised with him regarding his business and stood in a confidential relation to him, and that said three defendants, with the intention of cheating and defrauding said Joseph Blochowitz and these plaintiffs of their shares of their father's property, fraudulently and unduly induced the said Joseph Blochowitz to execute said deeds and by fraudulent acts attempted delivery of said deeds; that on account of the facts alleged, Joseph Blochowitz at the time said deeds were executed did not understand the nature and extent of said transactions and said deeds were never delivered in his lifetime."

On this petition, issue was joined by the defendants, and from an adverse judgment in the district court, they appealed to the supreme court, where, on a hearing *de novo*, a judgment was entered, in effect finding against the plaintiffs as to each allegation quoted, and sustaining the validity of said deeds, reversing the judgment of the district court, with directions to that court "to enter judgment in favor of defendants and against plaintiffs in conformity with this opinion." It further appears that these directions were complied with by the district court for Lancaster county. For the terms of this opinion, and the decision announced thereby, reference is made to *Blochowitz v. Blochowitz*, 122 Neb. 385, 240 N. W. 586.

As hereinbefore stated, the present suit is one in equity brought by plaintiff, Albert J. Blochowitz, as administrator with the will annexed of the estate of Joseph Blochowitz, deceased. Frank J., John A., and George Blochowitz are the defendants. The petition alleges that Albert J. Blochowitz, Lena M. Yankton, Anna Geistlinger, and the defendants, are the only children of Joseph Blochowitz surviving him, and, with his widow Rosalia Blochowitz, are his sole heirs at law and next of kin, and the only persons interested in his estate. It further alleges that at the time of the death

of Joseph Blochowitz on February 20, 1930, he was 85 years of age, and that for more than 10 years prior to his death, because of his advanced years, ill health and infirmities, he was mentally incompetent to transact business during that period of time. The petition then sets out at length the creation and existence of confidential relations between the father and the three defendants, and that in furtherance of a conspiracy to defraud "the other children" by fraud, undue influence, and in violation of the trust reposed in them, these defendants, it is alleged, secured and now retain possession of all the personal property of the said Joseph Blochowitz, except an interest in a small amount of wheat due to Joseph Blochowitz. The amount and value of this property thus obtained, and now possessed, by the defendants is alleged to exceed the sum of $300,000. Plaintiff further alleges that in addition to the property last referred to the defendants also had in their possession and control, in trust for Joseph Blochowitz, "certain other personal property or the proceeds of the same;" that said other items of personal property of said deceased came into the possession of the defendants in a fiduciary capacity, as such confidential agents and trustees, and the same was by said defendants fraudulently sold and conveyed and transferred into other forms of personal property, or into cash, and was then reinvested in other property and now stands in their names or in some of their names, and that possession of the same has been demanded of and refused by the defendants. Certain personal property is then referred to and partially described as being the property covered by these charges. The prayer of this petition is, in substance, that a decree be entered adjudging that the plaintiff, as administrator of the estate of Joseph Blochowitz with the will annexed, is the owner of and entitled to immediate possession of all the personal property of the said deceased referred to and described, and to each and every part thereof, and ordering that the defendants deliver all of said property and each and every part thereof to the plaintiff, and for other relief.

These allegations were separately traversed by each of the defendants, and, in addition, certain affirmative defenses were by them alleged. To these answers the plaintiff joined issue by replies filed.

In the first action herein referred to, involving real estate alleged to be the actual property of the decedent's estate, Albert J. Blochowitz and his sisters, Lena M. Yankton (nee Blochowitz) and Anna Geistlinger (nee Blochowitz) were the sole plaintiffs, and Frank J., and wife, John A., George Blochowitz, and Rosalia Blochowitz were the sole defendants. In the present proceeding, which concerns personal property only, likewise alleged to be the actual property of decedent's estate, Albert J. Blochowitz, as administrator with the will annexed, is plaintiff, and the other brothers are defendants. The petition alleges that the acts of the defendants therein complained of were done and performed by the defendants with the intention to cheat and defraud Albert J. Blochowitz, Lena M. Yankton and Anna Geistlinger of any share in their father's estate. No similar charge is made in the petition with reference to the mother, Rosalia Blochowitz. The petition alleges that the six named are the only children of Joseph Blochowitz surviving him, and that they, with his wife, are his sole heirs at law and next of kin, and the only persons interested in said estate. The petition fails to allege the existence of unpaid debts, legacies, allowances or bequests. The answers each separately allege, and the proof establishes, that there are no unpaid claims against this estate, that the time for filing claims against said estate has expired, and that the county court of Lancaster county had duly made and entered an order in the matter of the estate of Joseph Blochowitz, deceased, then and there pending, barring all claims against that estate. These facts so alleged, and the evidence in the record, disclose that the real parties in interest to the present litigation are Albert J. Blochowitz, Lena M. Yankton and Anna Geistlinger, now represented by the administrator, on the one side, and Frank J., John A., and George Blochowitz, on the other.

In this litigation, Rosalia Blochowitz, the mother, though, not a party to the suit, in effect sustains the contentions of the defendants as to the issues presented for trial. The demands of the administrator are thus, in truth and in fact, wholly based on the claim that Albert J. Blochowitz, Lena M. Yankton and Anna Geistlinger, as heirs of their deceased father, are each entitled to an aliquot portion in and to the property in suit, and as to which, if this theory is correct, the defendants and the mother must be deemed to possess rights of inheritance in dignity and importance equal to those of claimant. From this situation certain conclusions follow.

The general rule appears to be: "Where there is an administrator, and the heirs or parties beneficially entitled thereto are in possession of personal property, the administrator will not be allowed to recover if it appears that the debts are all paid." 2 Woerner, American Law of Administration (3d ed.) 662. The following cases support the rule just quoted: *Abbott v. People,* 10 Brad. (Ill. App.) 62; *Lewis v. Lyons,* 13 Ill. 117; *Richardson v. Cole,* 160 Mo. 372, 61 S. W. 182; *Woodhouse v. Phelps,* 51 Conn. 521; *Robinson v. Simmons,* 146 Mass. 167, 15 N. E. 558; *Diem v. Drogmiller,* 158 Mich. 380, 122 N. W. 637. See, also, *Pritchard v. Norwood,* 155 Mass. 539, 30 N. E. 80; *Langley v. Farmington,* 66 N. H. 431, 27 Atl. 224; *Moore v. Brandenburg,* 248 Ill. 232, 93 N. E. 733.

In *Succession of McBurney,* 162 La. 758, 111 So. 86, where there was no indebtedness of the succession, the rule was announced that executors of a solvent succession are without interest or authority to champion rights of heirs. The reason for the rule was thus stated: "It is not for him (executor or administrator), it is true, to assail the validity of acts done by the decedent, unless necessary for the protection of creditors; and if he have already settled all the debts and charges of the succession, it is improper for him to institute new actions, because the objects of his agency have been fulfiled and he should give way to the heirs who are the only persons interested and may assert their own

rights." See, also, *Hofmann v. Tucker*, 58 Neb. 457, 78 N. W. 941; *Goodman-Buckley Trust Co. v. Poulos*, 124 Neb. 697, 248 N. W. 64.

Our statute pertaining to probate and administration of estates, originally, was largely a reenactment of the statutes of Wisconsin. In *Eisentraut v. Cornelius*, 134 Wis. 532, 115 N. W. 142, the plaintiff sued as administratrix of the estate of Carl Nitzsche for an accounting and to recover from the defendants money, notes, and property which it is alleged they wrongfully obtained from Carl Nitzsche by the exercise of undue influence. Theresa Cornelius was one of six surviving daughters of the deceased, who, together with two grandchildren of a deceased son of Nitzsche, constituted the only heirs. The trial court awarded judgment for the entire amount of the properties received by the defendants. This judgment was reversed on appeal. On the point here under consideration the supreme court of Wisconsin said: "The (trial) court may upon a final accounting require defendants to account to the administratrix for any part of the estate found to be in their possession, and direct them to pay to the administratrix the amount thereof required for administration of the estate and the payment of the amounts found due the other distributees. It would be a useless and an idle ceremony to require defendants to turn over to the administratrix any property or money which may be found due them upon distribution of the estate."

Section 30-406, Comp. St. 1929, vests the executor or administrator with "a right to the possession of all the real as well as the personal estate of the deceased * * * until the estate shall have been settled, or until delivered over * * * to the heirs or devisees."

We have sustained the right of the executor and administrator, under this statutory provision, as a general rule, to maintain ejectment for real estate, pending payment of debts and settlement of the estate. *Carson v. Dundas*, 39 Neb. 503, 58 N. W. 141; *Tillson v. Holloway*, 90 Neb. 481, 134 N. W. 232; *Dobney v. Chicago & N. W. R. Co.*, 120 Neb. 824, 235 N. W. 585.

But we also determined that the administrator is not entitled, as against an equitable owner, to possession of property, real or personal, of the estate except upon showing priority of creditors' claims. *Koslowski v. Newman,* 74 Neb. 704, 105 N. W. 295; *Tyrrell v. Judson,* 112 Neb. 393, 199 N. W. 714.

Sections 30-1301 to 30-1308, Comp. St. 1929, provide for the distribution of the estate of a decedent. These provisions in effect require that at any time after the debts, allowances and necessary expenses have been paid or provided for (including the giving of a proper bond), upon proper application the county court shall by a decree for that purpose assign the residue of the estate to such other persons as are by law entitled to the same. While these statutory provisions necessarily operate to modify the general rule heretofore quoted, it is not wholly abrogated. Thus, our probate enactments do not contemplate that under all circumstances or conditions executors and administrators are vested with a continuing and exclusive right of possession and control of the real and personal estate of their decedents.

We have held that heirs may, even during the pendency of administration, and prior to final settlement, maintain an action in ejectment for real estate of their ancestor against any one except the administrator. *Lewon v. Heath,* 53 Neb. 707, 74 N. W. 274; *Clark v. Fleischmann,* 81 Neb. 445, 116 N. W. 290; *Tunnicliff v. Fox,* 68 Neb. 811, 94 N. W. 1032; *McManus v. Burrows,* 89 Neb. 250, 131 N. W. 211; *Jetter v. Lyon,* 70 Neb. 429, 97 N. W. 596; *Gillespie v. Truka,* 104 Neb. 115, 175 N. W. 883; *Jackson v. O'Rorke,* 71 Neb. 418, 98 N. W. 1068.

We have also announced the principle that a devisee of real estate "may maintain an action for the partition thereof against the executor and the other devisees, at any time after the expiration of the time for filing claims against the estate, although the estate has not been settled and there has been no decree of distribution, provided the personal assets, in the hands of the executor, are sufficient to dis-

charge the debts of the estate and the charges enumerated in section 289, chapter 23, Compiled Statutes (Comp. St. 1929, sec. 30-1302)." *Schick v. Whitcomb,* 68 Neb. 784, 94 N. W. 1023. See, also, *Hughes v. Langdon,* 111 Neb. 515, 199 N. W. 832.

So, as to personal property of a decedent, in *Cox v. Yeazel,* 49 Neb. 343, 68 N. W. 483, we announced the rule, as: "Generally, an action to recover a debt payable to a deceased intestate must be brought by the administrator of the estate." That pronouncement was qualified by the further declaration: "Such an action cannot be maintained by the heirs at law, unless there be no demands against their decedent ancestor and there has been no administration, or the administration has been closed."

In *Tecumseh Nat. Bank v. McGee,* 61 Neb. 709, 85 N. W. 949, where an improvident settlement of pending litigation had been made by an administrator, this court announced the rule that the trial court may properly, under the circumstances, permit the complaining heir at law to be substituted to prosecute the action in her own name.

In *Prusa v. Everett,* 78 Neb. 251, 113 N. W. 571, an action in equity was prosecuted by the only heirs at law and beneficiaries under the will of Anton Prusa, deceased, to obtain a decree against the defendants for an accounting, and a judgment for the amount found due was sustained by this tribunal notwithstanding the administrator *de bonis non* refused and neglected to bring the action. The reasons for this action, as stated in the opinion formally approved by this court, are: "From the petition herein it appears that there are no outstanding claims against the estate; that the interests of all concerned have been settled; that the beneficiaries under the will are the only persons interested; that but for the claim alleged to be due from the defendants nothing remains but the statutory and formal proceedings to settle the estate. Personally the administrator *de bonis non* has no interest in this claim. Were he to sue, it would be solely for the benefit of the plaintiffs herein. Under these circumstances, we think * * * that a court of equity should

entertain the action." See, also, *Hughes v. Langdon,* 111 Neb. 508, 196 N. W. 915.

As applied to the instant controversy, the controlling underlying principles, developed by application of the foregoing precedents thereto, invoke and prefigure as controlling therein these maxims: "Equity regards substance rather than form;" "Equity delights to do justice and not by halves;" and, "He who seeks equity must do equity."

It may be conceded that the equities expressed by these maxims must arise from and belong to the transactions in which relief is sought. Here, the real and sole parties in interest are the wife and six surviving children of Joseph Blochowitz, deceased. There is no unpaid ancestral indebtedness. No claims against the deceased's estate have been filed in the probate court of competent jurisdiction, and by a proper, final order of that court, duly made and entered, all possible existing claims against the same have been regularly barred. As was recognized in *Prusa v. Everett, supra,* so there exists in the instant case the fact that officially and personally the administrator with the will annexed has, as such administrator, no interest in the cause of action. In fact, he sues solely for the benefit of himself and two sisters as individuals. His right as administrator to recover in equity, if the maxims above quoted be given due force and effect, is necessarily limited to and by the rights of the real parties in interest which are so formally represented by him. Under such circumstances, it follows that to the extent that contracts, conveyances, deeds and judgments, and the conclusive implications and estoppels arising therefrom are binding upon the real parties in interest as individuals, they are in this proceeding equally binding upon such administrator.

As a defense to the plaintiff's demand, the defendants have each separately and severally pleaded as *res judicata* the determinations made and the final judgment heretofore entered in the case of Albert J. Blochowitz, Lena M. Yankton and Anna Geistlinger v. Frank J. Blochowitz, et ux., John A. Blochowitz, George Blochowitz and Rosalia Blocho-

witz (122 Neb. 385, 240 N. W. 586), a proceeding to which we have already had occasion to refer.

"The doctrine of *res judicata* * * * embodies two main rules, which may be stated as follows: (1) The judgment or decree of a court of competent jurisdiction upon the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same cause of action either before the same or any other tribunal. (2) Any right, fact, or matter in issue, and directly adjudicated upon, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether the claim or demand, purpose, or subject-matter of the two suits is the same or not." 34 C. J. 742.

It is with the application of the second rule that we are concerned in the present case. The doctrine in question, including the distinction above outlined, has been accorded due recognition in this jurisdiction. See *Slater v. Skirving,* 51 Neb. 108, 70 N. W. 493; *Triska v. Miller,* 86 Neb. 503, 125 N. W. 1070; *Federal Trust Co. v. Baxter,* 128 Neb. 1, 257 N. W. 368; *State v. Newman Grove State Bank,* 128 Neb. 422, 259 N. W. 170.

In *Hanson v. Hanson,* 64 Neb. 506, 90 N. W. 208, we announced the rule: "A former judgment is conclusive when the parties and the question involved in the two suits are the same, although the property claimed in them may be different."

Recurring to the analysis and comparison of the issues presented and determined in the adjudication pleaded by the defendants as *res judicata,* it is to be noted that they included these questions: That because of old age and condition of his health Joseph Blochowitz was mentally incompetent to execute the conveyances in suit; that for many years prior to April 4, 1929, John A. Blochowitz and George Blochowitz lived with the said Joseph Blochowitz, and, together with their brother Frank J. Blochowitz, transacted

the father's business and advised him concerning the same; that they stood in confidential relations to their father, and, taking advantage thereof, fraudulently induced said Joseph Blochowitz to execute said deeds, etc.

In the present case the foregoing allegations as to the mental capacity of Joseph Blochowitz, the relation of trust and confidence sustained by the three sons to the father, their fraudulent intent and conspiracy to cheat and defraud Albert J. Blochowitz and his two sisters of their share in their father's inheritance are set forth substantially as alleged in the first case, but somewhat enlarged and amplified. As to the ultimate facts established by the evidence relied upon by the parties in each case, so far as they apply to the question of mental capacity of Joseph Blochowitz, and the alleged fraudulent acts of the three defendants, and the relations sustained by each of them to their father, they are substantially identical. In other words, the testimony presented by the plaintiffs in both cases is addressed to the same acts of alleged fraud, and the exercise of identical undue influence during the period of time between 1917 and 1930, which is claimed to have resulted in depriving them of their inheritable share of the father's real estate, and likewise their distributable share of the father's personal property. These questions of evidence were all resolved against the plaintiffs in the first case.

In the first action, brought to annul the deeds and recover the land conveyed, the evidence wholly failed to establish the mental incapacity of the father, or establish fraudulent acts or influence on the part of the defendant sons, and undue influence upon the mind of the father was negatived. As to the existence of confidential relations, it was expressly held in the first case, as follows (122 Neb. at page 406) : "It is quite obvious that, notwithstanding the advancing years and the delegation of certain matters to others, Joseph Blochowitz was, and ever continued, the master mind and the occupier of the relatively dominant position, and at no time, in comparison with his sons, could he be deemed the weaker party. The situation fully justifies the application of the

rule that, 'Even where the donor and donee stand in confidential relations, the presumption of undue influence arises only when the weaker party is the donor, being always against the party having the superior dominant position or control, though who was the dominant spirit is always a question of fact.' 8 R. C. L. 1033, sec. 89."

Thus, it is to be observed that substantially the same questions were presented by almost identical evidence in both cases, which were necessarily determined in the first decision. The decision thus made is here controlling. All questions of mental capacity of the father, and alleged fraudulent acts on the part of the defendant sons, in view of the doctrine announced in *State v. Newman Grove State Bank, supra,* are foreclosed by the determinations necessarily made in *Blochowitz v. Bochowitz,* 122 Neb. 385, 240 N. W. 586.

It may be said in passing that, irrespective of the force and effect of the previous decision, a careful consideration of all the evidence adduced in the present action compels the decision here announced.

But, still another reason is presented by the record. The evidence unmistakably discloses that on April 4, 1929, Joseph Blochowitz and his wife, both then endowed with requisite mental capacity, with the evident purpose to complete a matured plan for the distribution of their world possessions, which for many years they had consistently followed, went to the city of Lincoln and sought the assistance of a friend in whom they had confidence. Alone with this friend, evidently pursuant to his advice, they formally expressed their intent and plan in five written instruments, duly executed by them, which together set forth and carried into effect their present purpose. The result was strictly in harmony with the course they had previousy followed, and proceeded on the basis of the confirmation of what they had previously done, and to render certain the complete fruition of the plans originally adopted by them. Accordingly, and substantially contemporaneously, four warranty deeds conveying parcels of their Lancaster county lands to

each of their four sons were executed and acknowledged by the father and mother, and likewise a last will was duly executed by the father. Together these five instruments then expressed the intent and purpose of Joseph Blochowitz and wife. These four deeds and the will, after due execution, were placed in one and the same envelope, and were then delivered to a competent party with the positive direction, "Here are these papers. Take care of them for the boys and girls." These four warranty deeds were adjudged to be valid in all respects in *Blochowitz v. Blochowitz,* 122 Neb. 385, 240 N. W. 586. The will has been duly admitted to probate in a court of competent jurisdiction, and the testamentary capacity of the testator thus finally determined. The terms of these instruments are now finalities so far as the parties to this litigation are concerned. The true intent and the effect accomplished thereby is to be determined by the proper construction of these five instruments as five inseparable parts of a single whole. Comp. St. 1929, sec. 20-1215.

In the absence of statute, "in certain instances, a nontestamentary instrument of the testator, such as a contemporary document, and his will may be construed together to ascertain his intention." 69 C. J. 124.

In the present case, the contemporary deeds delivered in escrow, created a situation to which the will expressly attached conditions and consequences, and by necessary implication referred thereto, and therefore the case is within the province of the further rule: "A will may be construed in connection with writings annexed or referred to therein." 69 C. J. 124. For cases supporting this rule, see *Bacon v. Nichols,* 47 Colo. 31, 105 Pac. 1082; *Snyder v. Greendale Land Co.,* 48 Ind. App. 178, 91 N. E. 819; *Traughber v. King,* 235 Ky. 658, 32 S. W. (2d) 8; *Hall v. Hall,* 153 Ky. 379, 155 S. W. 755; *Jennings v. Reeson,* 200 Mich. 559, 166 N. W. 931; *Ray v. Walker,* 293 Mo. 447, 240 S. W. 187; *White v. Reading,* 293 Mo. 347, 239 S. W. 90; *Lawrence v. Burnett,* 109 S. Car. 416, 96 S. E. 144.

However, in this state, the statute requires: "In the con-

struction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true interest (intent) of the parties, so far as such intent can be collected, from the whole instrument, and so far as such intent is consistent with the rules of law." Comp. St. 1929, sec. 76-109. This statute is applicable alike to wills, deeds, and contracts to convey. *Heiser v. Brehm,* 117 Neb. 472, 221 N. W. 97; *Reuter v. Reuter,* 116 Neb. 428, 218 N. W. 86.

Therefore, we are required to ascertain and enforce the expressed intention of Joseph Blochowitz, as gathered from the five instruments referred to, construed as an entirety, giving to each word and sentence such significance as will carry into effect the true intent of the makers thereof as expressed therein. So construed, it is obvious that the words, "All of my four sons, Frank J., John, Albert, and George, are entitled to no further part of inheritance as all each and every one of them have received all that they are entitled to," whether considered in the nature of a contemporaneous charge of an equitable advancement by ancestor to heirs, or as a condition inhering in the deeds of gift, or as substantially a part of the consideration of such deeds, clearly express the intent of the makers which it is the duty of this court to carry into effect, and are thus operative to preclude each of the four sons from further participation as heirs of their father's estate.

It follows that no recovery can be sustained in the present case on any cause of action of which Albert J. Blochowitz is the ultimate beneficiary.

There remains only the question of whether the gifts of personal property made by the father, especially those occurring after April 4, 1929, and prior to his death on February 20, 1930, with mental capacity established, and the existence of fraud and undue influence negatived under the circumstances disclosed by the record, constituted valid transfers of property to the donor's sons. All of the negotiable securities involved, except such as may have been

payable to order, were either indorsed by the father, and delivered, or were made out in the names of the sons as payees, and such instruments delivered or placed in their possession and control by the father, or at his direction. This was ample to vest the title. In so far as the claim of rights and benefits claimed to have been retained by the donor are concerned, it may be said, in view of all the evidence, and particularly in view of the practical construction of this claimed power for a period of more than 13 years by the parties concerned, that the validity of the transfers is in no manner affected thereby. *In re Estate of Sides,* 119 Neb. 314, 228 N. W. 619; *In re Estate of Dayton,* 121 Neb. 402, 237 N. W. 303; *Kennedy v. Nelson,* 125 Neb. 185, 249 N. W. 546.

It follows that the judgment of the trial court is correct, and it is

AFFIRMED.