THE EQUITABLE LIFE INSURANCE COMPANY, APPELLANT, v. A. W. BOWMAN, DEFENDANT; A. D. MCHENRY, INTERPLEADER.—32 S. W. (2d) 126.

Kansas City Court of Appeals. November 3, 1930.

*F. P. Stapleton* for appellant.

*C. E. Ernst* and *Kyle Williams* for respondent.

BLAND, J.—This an action for rent in the sum of $300. De-fendants filed an answer in the nature of a bill of interpleader asking that the plaintiff and one A. D. McHenry interplead for the fund in controversy which defendants admitted to be owing to one or the other. The court made an order requiring plaintiff and McHenry to interplead for the fund whereupon the defendants paid said sum in controversy into court. Thereafter McHenry filed his answer and interplea, to which plaintiff filed a reply. The court rendered a decree in favor of the interpleader, McHenry. Plaintiff has appealed.

The case was tried upon an agreed statement of facts which sets out the bare transactions relating to the controversy, without reference to any of the details or circumstances surrounding these transactions. It is difficult for a court of equity to decide the case upon the meager facts contained in the agreed statement of facts but we gather from those facts, together with the inference to be drawn therefrom, the following:

On August 20, 1923, Edgar L. Lundy and wife were the owners of 74 acres of land in Gentry County. On that day they gave to the Sison Land and Title Company of Maryville a note in the sum of $4,000, bearing six percent interest per annum and falling due on September 1, 1928. At the same time a deed of trust upon the land was executed by the Lundys to secure said note. On January 1, 1926, Lundy and wife leased, in writing, the land to defendants, A. W. and M. E. Bowman, for a term of three years. The rental reserved in the lease was $300 per year and three promissory notes in the sum of $300 each were given by defendants to cover such rent. One of said notes was to become due on January 1, 1927, one on January 1, 1928 and one on January 1, 1929. All of these notes were payable to Lundy.

On May 20, 1926, Lundy and wife executed a general warranty deed in blank, that is to say the name of the grantee was not written into the deed at the time, and delivered said deed to one P. D. Sample. This deed recited that it was subject to the deed of trust to Sison Land and Title Company and the lease to the Bowmans. On said day, and apparently as a part of the transaction, Lundy sold and assigned the above described rent notes, together with the lease, to said Sample, who "took and received said notes as a holder in due course." On September 17, 1926, Sample sold and conveyed the land to the interpleader, McHenry, conveyance being made to Mc-

Henry by writing into the warranty deed from Lundy and wife, the name of McHenry as grantee. McHenry caused the deed to be recorded. On the same day, and apparently as a part of the transaction, Sample transferred and delivered the rent notes to McHenry, who received them "as a holder in due course."

Sometime during the month of May, 1928, McHenry sold and conveyed the land to one Yeo. The deed from McHenry to Yeo was never recorded. McHenry did not transfer the remaining unpaid rent note to Yeo but retained, and still retains, the same. On October 26, 1928, the deed of trust aforesaid was foreclosed and plaintiff became the purchaser of the land at the foreclosure sale for the price and sum of $4,297.52, being the amount of the mortgage note, interest and the cost of the foreclosure proceedings. McHenry collected the rent notes falling due on January 1, 1927 and 1928, but the note becoming due on January 1, 1929, which was apparently given for the rent of the farm for the calendar year of 1928, is still due and unpaid.

It is plaintiff's contention that the rent to become due on demised premises passes to the grantee as an incident to the reversion and that the only manner in which the purchaser at a foreclosure sale can be deprived of the rents accruing after said sale is by the sale or assignment of the rent note for value prior to such sale. It is the contention of the interpleader that when the owner transfers the reversion without the rent there is a severance of the rent from the reversion in the same manner as a transfer of the rent by the owner who retains the reversion. [See Allen v. Pullam, 10 S. W. (2d) 64; Johnson v. Murray, 289 S. W. 977.]

It is unnecessary to pass upon the contention of the plaintiff for the reason that, applying the general rule in reference to the transference of rented realty by the owner, we think that the decree should have been in favor of plaintiff; regardless of his peculiar situation as a purchaser of the property at a foreclosure sale. The general rule is that rent is an incident to the reversion and passes with it unless the lessor severs the rent from the reversion by expressly reserving it if he has not theretofore granted it. While he may grant the rent alone, in which case a subsequent grant of the reversion does not pass the rent, where he has not granted the rent it will pass with the reversion, unless he expressly reserve it. [Real Estate Co. v. Dawley, 183 Mo. App. 1, 6, 7; Mining Co. v. Baker, 170 Mo. App. 457; Steed v. Hinson, 76 Ala. 298, 300; 36 C. J. p. 367.]

There is nothing in the record to show the nature of the transaction between McHenry and Yeo except the bare statement that the former conveyed the land to the latter by a deed that has never been recorded. Unless McHenry *expressly reserved* the rent, the general rule should be applied which requires a holding that the conveyance of the reversion to Yeo carried with it the rent as an incident to the reversion.

The mere fact that McHenry did not turn over the note to Yeo does not affect the general rule. The transfer of the reversion by the lessor transfers the future rent and all notes held by the lessor representing the same. [Watkins v. Duvall, 69 Miss. 364; Bowdre v. Sloan, 69 Miss. 369; Beebe v. Coleman, et al., 8 Paige (N. Y.), 392; Steed v. Hinson, supra; Ala. Gold Life Ins. Co. v. Oliver, 78 Ala. 158, 161; 16 R. C. L. p. 918; L. R. A. 1915C p. 230; 1 Tiffany on Landlord and Tenant, p. 1106.]

There is nothing in the agreed statement of facts to show that the retention of the rent note in controversy by McHenry was a part of the consideration for the conveyance to Yeo or, in fact, under what circumstances he retains it. The general rule being that the conveyance of the reversion transfers the rent note as an incident to the reversion, the burden was upon the interpleader, McHenry, to show that the rent was severed from the reversion when the land was sold to Yeo by some express reservation or agreement between McHenry and Yeo which would accomplish such a purpose. What evidence would have been competent to so show we need not say for the reason that there was no such showing of any kind attempted and, under the circumstances, it must be held that the rent passed with the reversion when the latter was sold by McHenry to Yeo. Of course, the recital in the Lundy warranty deed that the deed was made subject to the Sison mortgage and the lease to the defendants, did not work a severance of the rent from the reversion. [See Biddle v. Hussman, 23 Mo. 597.]

However, it is claimed by the interpleader that Lundy sold to Sample the rent notes "prior to the sale of the reversion" because the Lundy deed was not a valid conveyance until the name of some grantee was written therein, which was not done until the name of McHenry was so written, and that "since P. D. Sample held the rent notes as a bona-fide holder for value, the legal title to the reversion was not in him and there was a severance of the rent from the reversion." While there may not have been a legal conveyance of the property until the name of the grantee was written into the Lundy deed, which was several months after Sample received the rent notes, yet the interest of Sample in the reversion is manifest. Looking at the transaction between Lundy and wife on the one hand and Sample on the other it is made fairly to appear that Sample was purchasing the reversion. There is nothing in the agreed statement of facts to indicate that Sample was the agent of either the Lundys or McHenry. The fact that the rent notes and the lease to the Bowmans were transferred and delivered by Lundy to Sample "for a valuable consideration," and that "Sample took and received such notes as a holder in due course," as recited in the agreed statement of facts, raises an inference that Sample was not acting as an agent in the transaction (other than possibly to fill in the name of the grantee in the warranty

deed) but was purchasing the property from the Lundys who delivered the rent notes and lease to Sample as further evidence of the fact that the rent was to go with the reversion. There is certainly nothing in the agreed statement of facts to remotely suggest that it was the intention of Lundy to transfer the rent notes to Sample other than as an incident to the reversion.

The judgment is reversed and the cause remanded with directions to the Chancellor to award the fund in controversy to the plaintiff. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.