KARL E. HAHN, APPELLEE, v. MARY MARGUERITE VERRET, APPELLANT: OMAHA NATIONAL BANK, EXECUTOR, APPELLEE.

KARL E. HAHN, APPELLEE, v. MARY MARGUERITE VERRET, APPELLEE: OMAHA NATIONAL BANK, EXECUTOR, APPELLANT.

11 N. W. (2d) 551

FILED OCTOBER 22, 1943.   Nos. 31569, 31570.

*Ambrose C. Epperson,* for Mary Marguerite Verret.

*Waldron & Newkirk,* for appellee Hahn.

*Hotz & Hotz,* for the Omaha National Bank.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL and WENKE, JJ.

WENKE, J.

This action was commenced in the district court for Adams county by Karl E. Hahn, as plaintiff, against Mary Marguerite Verret, George L. Verret, and the Omaha National Bank, as executor of the estate of Mary Hahn, deceased, as defendants, for the purpose of quieting title in

and to the lands described therein, which are located in Adams county, to construe the will of Mary Hahn, deceased, particularly with reference to the rights of Mary Marguerite Verret, named as legatee therein, and to enjoin the defendants from in any way interfering with the possession or collection of rents since December 22, 1940. The action was dismissed as to George L. Verret who is the husband of the defendant Mary Marguerite Verret. From a decree finding generally in favor of the plaintiff and that the defendant Mary Marguerite Verret had no rights in or to said premises under the will of Mary Hahn, deceased, quieting title in the plaintiff and permanently enjoining the defendants from molesting the plaintiff's possession and collection of rents therefrom which accrued after December 22, 1940, the defendants Mary Marguerite Verret and the Omaha National Bank, as executor of the estate of Mary Hahn, deceased, have taken separate appeals to this court.

By stipulation of the parties the separate appeals were consolidated and are considered and disposed of by this opinion. For the purpose of this record, Karl E. Hahn, the appellee, will be referred to as Hahn; Mary Marguerite Verret, appellant, will be referred to as Mrs. Verret; and the Omaha National Bank, as executor of the estate of Mary Hahn, deceased, appellant, will be referred to as the executor.

The record discloses that Mary Hahn and Leopold Hahn were the parents of Karl E. Hahn and Edith Hahn and lived in Omaha, Nebraska. That Leopold Hahn died in about 1915 and Mary Hahn died on December 22, 1940. Karl E. Hahn is now a resident of Chicago, Illinois, and has been for a number of years and at the time of the trial he was 58 years of age. He left home at the age of 18 years, but had always remained on friendly terms with his parents and had visited his mother about once a year up until the time of her death. After the death of his father he generally looked after the property of his mother, including the farm in Adams county, and collected the income and rents therefrom and remitted the same to her. The

daughter, Edith Hahn, married Jess Rhine and unto this marriage was born the granddaughter Mary Marguerite Rhine. About a year after her birth in 1908, the mother, Edith Rhine, died and the son-in-law and granddaughter continued to live in the home of Mary and Leopold Hahn where she remained until she married George L. Verret in 1932. In the meantime her father remarried in 1927 and moved out of the Hahn home. After the granddaughter's marriage she left Omaha for some time and did not again take up her residence with her grandmother Hahn until 1934 when Mary Hahn bought a residence on North Forty-fifth street and gave it to her granddaughter, Mrs. Verret, paying from her funds thereon the sum of $4,350. Mrs. Hahn and the Verrets lived in this home for about a year when they all moved to Nebraska City where they lived until Mrs. Hahn was confined to a sanitarium about the first of the year 1940 where she remained until the date of her death. The relationship between Mary Hahn and her granddaughter and husband was at all times friendly.

On May 13, 1933, Mary Hahn made a last will and testament which was allowed and admitted to probate in the county court of Douglas county on May 19, 1941, the principal part of which, for the purposes of this appeal, are paragraphs one, two, and four, which are as follows:

"I. I give, devise and bequeath unto my son, Karl E. Hahn, now of Chicago, Illinois, in fee all of my real estate wheresoever situate; it being my intention that he shall have the real estate as his own and to do with it as he pleases.

"II. I give, devise and bequeath unto my granddaughter, Mary Marguerite Verret, Five Thousand ($5,000.00) Dollars in cash or in securities of a value equal to Five Thousand ($5,000.00) Dollars; it being my desire in making this specific bequest to my said granddaughter that this money be used by my said granddaughter for the purchase of a home, but that this bequest of Five Thousand ($5,000.-00) Dollars I give to my said granddaughter absolutely and without any restrictions. * * *

"IV. I hereby direct, authorize and empower my executors, while in possession and control of this estate, to manage the said estate with full power and authority in the discretion of said executors and in the same manner and to the same extent as I could do if living, to retain any or all property, whether real, personal or mixed, which I may own at the time of my death, subject to the terms of this Will, or to sell at public or private sale, convey with or without covenants of warranty, to execute, acknowledge and deliver to any purchaser or purchasers thereof good and sufficient deeds or other instruments of transfer, to lease for any term, exchange all or any of said property, to borrow money, to make promissory notes, bonds or other obligations, and to renew or extend same or any part thereof as security therefor."

This will named Karl E. Hahn and the Omaha National Bank as coexecutors but Karl E. Hahn resigned and failed to qualify and the bank was appointed executor and qualified as such. The county court fixed a time for filing claims and notice thereof was published and on September 13, 1941, order was entered barring the further filing of claims. Thereafter the executor filed its final report and petition for the settlement of the estate on November 21, 1941, notice of which was published and hearing was set for December 22, 1941, but was postponed and no order has been entered approving said final account or ordering the final disposition of the estate. However, on May 27, 1942, pursuant to application of the executor for directions regarding its administration of the assets of the estate, the county court entered an order construing the will to provide that the $5,000 legacy of Mrs. Verret should be paid in any event and directing postponement of the final settlement of the estate and directing the executor to collect the rents from the land herein involved from and after the date of the death of Mary Hahn. From this order Hahn filed a petition in error in the district court for Douglas county on August 24, 1942, which, upon application of Hahn for continuance, was on October 3, 1942, dismissed by the district

court for Douglas county for the reason that the order appealed from was not a final order. From this dismissal none of the parties took an appeal. This action was commenced by Hahn May 23, 1942. At the time of making her will Mary Hahn owned the real property in Adams county, that being the only real estate she then owned, and had more than sufficient personal property to take care of the legacy which she provided in her last will and testament for Mrs. Verret. However, she used $4,350 of this in 1934 to purchase a home for Mrs. Verret.

During her lifetime Mary Hahn entered into a three-year lease on the Adams county property being from March 1, 1939, to March 1, 1942. This lease provided for cash rent payable annually as evidenced by notes executed by the lessee at the time of the lease. The lease provided rent for the last year, being from March 1, 1941, to March 1, 1942, in the sum of $1,100 as evidenced by two notes, each in the sum of $550 due March 1, 1941, and October 1, 1941, and which notes were possessed by Mary Hahn at the time of her death and subsequently collected by Hahn.

At the time of her death Mary Hahn was the owner of 16 shares of American Telephone and Telegraph stock of a market value of about $2,000 and had joint bank accounts with her granddaughter totaling over a thousand dollars. That at the time of making the will the land was worth about $6,000 to $7,500 and at the time of her death from $16,000 to $18,000.

The first question presented by this appeal is, did the district court for Adams county have jurisdiction to entertain this action while the estate of Mary Hahn was being administered by the county court of Douglas county? Under section 16, article V of the Constitution, the county court has exclusive jurisdiction of the probate of wills and the administration of estates. *Zimmer v. Gudmundsen,* 142 Neb. 260, 5 N. W. (2d) 707. Likewise, the district court for Adams county, being the county in which the real estate here involved is located, has jurisdiction of an action to quiet title thereto. Comp. St. 1929, sec. 20-401. On May

27, 1942, the county court of Douglas county entered an order in said estate, upon application of the executor for directions, instructing the executor to take possession of the real estate of the deceased, being the real estate herein involved, to collect the rents therefrom and apply them on the legacy of Mrs. Verret, she, under the provisions of the will as construed by the court, being entitled thereto. This order made no distribution of the estate nor did it pass upon the final report of the executor for settlement, but postponed the hearing thereon. Does this order in any way prevent the district court from proceeding in this action? In the case of *In re Estate of Stieber,* 139 Neb. 36, 296 N. W. 336, we held: "A county court in Nebraska in the exercise of its probate jurisdiction, as a distinct and independent branch of jurisdiction, has no power to construe wills. *Andersen v. Andersen,* 69 Neb. 565, 96 N. W. 276; *Lesiur v. Sipherd,* 84 Neb. 296, 121 N. W. 104; *Youngson v. Bond,* 69 Neb. 356, 95 N. W. 700. Under the record in this case, the construction of the will by the probate court was not incident to distribution of the estate, but solely for the benefit of the executor in advance of any distribution. Such a decree bound no one, but could only be for the guidance of the executor. No appeal from such decree would lie, and the district court acquired no jurisdiction on appeal." As stated in *Annable v. Ricedorff,* 140 Neb. 93, 299 N. W. 373: "This jurisdiction was long ago committed to the doctrine: 'The construction of the will in such a case (in probate court) is for the information and benefit of such executor or administrator only, in order to advise him what course to pursue. It adjudicates nothing beyond his rights and liabilities in the execution of his office; controversies between adverse claimants under the devise or between the executor or administrator and persons claiming adversely to the estate, will not be affected thereby.' *Youngson v. Bond,* 69 Neb. 356, 95 N. W. 700." As stated in *Youngson v. Bond, supra:* "A county court is not precluded from construing a will in a proper case and determining the effect and meaning of a devise of land, so far as is neces-

sary to give proper directions to an executor or administrator with the will annexed. The directions given by the court to the administrator cannot be used as the basis of a recovery by any one or to defeat a recovery by any one. The present title to the land is in no way brought in question. The construction of the will in such a case, is for the information and benefit of such executor or administrator only, in order to advise him what course to pursue. Controveries between adverse claimants under the devise or between the executor or administrator and persons claiming adversely to the estate will not be affected thereby, except as to claims for maladministration or improper execution of the trust. As pointed out in the former decision, the interest of the administrator with the will annexed extends only to possession of the land and disposition of the rents and profits in settlement of the estate. Such instructions as the court may give him, based upon construction of the will, in order that he may act intelligently with respect to lands devised, are not to be taken as adjudicating anything beyond his rights and liabilities in the execution of his office, and if there were any possibility that they might be given further effect, the constitutional provision in question would prevent it."

We are also committed to the view that in actions to quiet title, *St. James Orphan Asylum v. Shelby,* 75 Neb. 591, 106 N. W. 604; partition, *Mohr v. Harder,* 103 Neb. 545, 172 N. W. 753, and *Annable v. Ricedorff, supra;* and to enforce legacies, *Klug v. Seegabarth,* 98 Neb. 272, 152 N. W. 385, the district court has jurisdiction to construe a will in determining the rights of the parties to the land or legacy under the will.

At the time this action was brought the estate of Mary Hahn was being administered by the county court of Douglas county and an order barring claims had been entered. In his petition Hahn alleged and at the time of trial presented evidence and established, as the lower court found, that the personal property in the possession of the executor was ample to pay all debts, costs, and expenses of ad-

ministration. We have held that, although the statute provides that an heir or devisee of an estate cannot maintain an action for distribution or partition until the debts, allowances, and expenses against said estate have been paid or provided for unless he give bond with approved sureties to pay the same; nevertheless, when the allegations of the petition allege the solvency of the estate as well as the sufficiency of the personal assets to pay the debts, costs, and expenses of administration against it and this is conclusively established by the evidence, then partition may be had. *Majerus v. Santo, ante,* p. 774, 10 N. W. (2d) 608. Also, *Schick v. Whitcomb,* 68 Neb. 784, 94 N. W. 1023; Comp. St. 1929, sec. 30-405. This rule is likewise applicable in actions to quiet title.

The time for filing claims having expired, an order having been entered barring the further filing thereof and the personal assets of the estate being sufficient to pay the debts, costs, and expenses of administration, Hahn was entitled to bring this action to quiet title. Under the holdings of this court the order of the county court of Douglas county, made on application of the executor, directing the executor with reference to its actions in the administration of the assets of the deceased under the provisions of the will was entirely proper in safeguarding the executor in the administration of the estate but such order was not binding upon the devisee or legatee as between themselves nor between themselves and the executor. It was not a final order that was appealable and the entry thereof by the county court and the dismissal of the petition in error by the district court for Douglas county for the reason that it was not a final order that was appealable, and from which the parties took no appeal, in no way prevented Hahn from maintaining this action to quiet title.

The jurisdiction of the district court for Adams county is further challenged by the contention that under the provisions of sections 30-231, 30-232, 30-233, 30-234, 30-235, Comp. St. 1929, the county court of Douglas county has certain functions to perform in the administration of the es-

tate affecting this real estate. These statutes are not all applicable to the facts in this case and only those that are applicable will be discussed. Section 30-233, Comp. St. 1929, provides in part as follows: "The estate, real or personal, given by will to any devisees or legatees, shall be held liable to the payment of the debts, expenses of administration, and family expenses, in proportion to the amount of the several devises or legacies * * * ." And section 30-235, Comp. St. 1929, which reads as follows: "All the devisees and legatees who shall, with the consent of the executor, *or otherwise,* have possession of the estate given to them by will, before such liability shall be settled by the county court, shall hold the same, *subject to the several liabilities mentioned in the preceding section,* and shall be held to contribute, according to their respective liabilities, to the executor or to any devisee or legatee from whom the estate devised to him may have been taken, for the payment of debts or expenses, or to make up the share of a child born after the making of the will, or of a child or the issue of a child omitted in the will; and the persons who may, as heirs, have received the estate not disposed of by the will as provided in this article shall be liable to contribute in like manner as the devisees or legatees." (Italics ours.) The procedure for the determination of the liabilities is provided in section 30-237, Comp. St. 1929, which is as follows: "The county court may, by decree for that purpose, settle the amount of the several liabilities as provided in the preceding sections, and decree how much, and in what manner, each person shall contribute, and may issue execution as circumstances may require, and the claimant may also have a remedy in any proper action or complaint in law or equity." When, as provided in section 30-235, Comp. St. 1929, a legatee or devisee enters into possession with the consent of the executor, *or otherwise,* his possession may not be disturbed unless it appears that the property, real or personal, must be used for the payment of debts, costs, and expenses of administration. However, under the provisions of these statutes a devisee who has possession

of the real estate devised to him takes the same subject to the liabilities, if any, imposed by section 30-233, Comp. St. 1929, whenever they are finally determined by the court as provided in section 30-237, Comp. St. 1929.

The next question for consideration is whether or not the executor is entitled to the possession and rents from the lands involved in this action under the provisions of section 30-406, Comp. St. 1929, which reads as follows: "The executor or administrator shall have a right to the possession of all the real as well as the personal estate of the deceased, and may receive the rents, issues and profits of the real estate, until the estate shall have been settled, or until delivered over, by order of the county court, to the heirs or devisees, and shall keep in good tenantable repair all houses, buildings, and fences thereon which are under his control." It appears from the evidence that Hahn has had possession of the premises and collected the rents therefrom since the date of the death of the testatrix, December 22, 1940, including the cash rent for the year March 1, 1941, to March 1, 1942, in the sum of $1,100 evidenced by two notes due March 1, 1941, and October 1, 1941, as provided by the three-year lease of the premises entered into by the testatrix on July 11, 1938, and which notes were owned by the testatrix, as lessor, on the date of her death. That the title to real estate under a devise in a will is vested in the devisee at the instant of the testator's death is without question, Stanton v. Stanton, 134 Neb. 660, 279 N. W. 336, and conveys all of the interest of the deceased, section 30-202, Comp. St. 1929: "Every devise of land in any will hereafter made, shall be construed to convey all the estate of the devisor therein, which he could lawfully devise, unless it shall clearly appear by the will, that the devisor intended to convey a less estate." In National Bank of Commerce v. Lefferdink, 110 Neb. 275, 193 N. W. 916, we approved the following from Eiseley v. Spooner, 23 Neb. 470, 36 N. W. 659: "Rent reserved by lease of real estate, and not accrued at the time of a conveyance of the reversion, passes with such conveyance to the grantee. Every con-

veyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." The general rule is set forth in 32 Am. Jur. 364, sec. 448: "As a general rule, since rent to accrue is an incident of the reversion, upon the death of a lessor, who had reserved rent generally for the duration of the term, rents thereafter to accrue and to become payable either in money or in a share of the crops raised upon the premises do not devolve upon his executor or administrator for administration as a part of his personal estate, but descend at once, with the reversion, as real estate, to his heirs at law, or pass to the devisees who are entitled under his will to the reversion, unless otherwise disposed of by will." And as stated in *Schmid v. Baum's Home of Flowers,* 162 Tenn. 439, 37 S. W. (2d) 105: "Rent accruing to the lessor of real estate under the terms of his lease is said to be incident to the lessor's reversion. It is not a debt within the classification of choses in action, whether evidenced by promissory notes of the lessee or not. This right to future rents is not personal property, and upon the death of the lessor, or owner of the reversion, passes to the heir at law with the reversion. *Combs v. Combs,* 131 Tenn. 66, 173 S. W. 441." To like effect: *Watkins v. Duvall,* 69 Miss. 364, 13 So. 727; *Equitable Life Ins. Co. v. Bowman,* 225 Mo. App. 855, 32 S. W. (2d) 126. As stated in *Lewon v. Heath,* 53 Neb. 707, 74 N. W. 274: "If the title passes to and vests in the heirs, as it most certainly does, then the possessory right goes with it, except to the extent it is placed by law in the administrator, which is not exclusively or absolutely, but optionally with him, and for purposes indicated by statute and for none other; * * * ." And as stated in *Blochowitz v. Blochowitz,* 130 Neb. 789, 266 N. W. 644: "Thus, our probate enactments do not contemplate that under all circumstances or conditions executors and administators are vested with a continuing and exclusive right of possession and control of the real and personal estate of their decedents." And in *Tunnicliff v. Fox,* 68 Neb. 811, 824, 94 N. W. 1032: "Under our law, the real estate of a decedent be-

longs to the heirs at law, subject to the claims of creditors of the estate. There is no legal obligation upon the executor to take possession of the real estate until such action may be necessary to protect creditors; at all events not until claims are filed, or until directed so to do by the probate court." And also in *In re Estate of Pope,* 83 Neb. 723, 120 N. W. 191: "Where land is let and rent reserved in a share of the crops, the title to the land and to the landlord's share of the crops are not severed, but remain in the landlord and pass by his devise of the land."

Construing the foregoing authorities, the rents, either share or cash, accruing after the death of the owner, vest in the devisee or heir by reason of the passing of the title. While the same may be defeated by the executor or administrator taking possession thereof under the statute, such possession is for the purpose of paying the debts, costs, and expenses of the estate and if not needed for that purpose because the personal property is sufficient, then the heir or devisee is entitled thereto. Where the executor of the estate permits the devisee to remain in possession and collect the rents and the time for filing claims has passed and the personal property of the estate is sufficient to pay all debts, costs, and expenses, then the purpose for which the right of possession is given has passed and the right of the executor to possession for that purpose no longer exists and the devisee is entitled to have his title quieted as to the executor.

Did the provisions of the will make the payment of the legacy a charge on the real estate? A careful reading of the provisions of the will do not disclose any such charge to be made by the language thereof. The appellants cite the case of *Burton v. Defenbaugh,* 132 Neb. 851, 273 N. W. 489, in which the third paragraph of the syllabus reads:

"A legacy will ordinarily be regarded as payable primarily from personal property; but where that is insufficient, and in the absence of language in the will indicating a deliberate intent to exclude the real estate from such liability, the legacy will be chargeable against the real estate." A careful reading of the will in that case discloses no ne-

cessity for the application of the above principle for a determination of the issues therein presented nor do we think it states the correct rule. We think the correct rule is stated in *In re Estate of Strolberg,* 106 Neb. 173, 183 N. W. 97: " * * * legacies, as a general rule, are payable primarily out of the personal estate of the testator, and that real estate will not be charged with their payment unless the intention to do so is expressly declared or clearly inferable from the dispositions of the will." The court goes on further to state: "That the chief criterion is the intention of the testator, which may appear either expressly or by implication from the language and dispositions of the will; that such intention cannot be inferred solely from or shown solely by evidence of circumstances altogether extraneous to the will, nor is such evidence admissible on the question of intent where there is no ambiguity in the will; but where legacies are not expressly charged upon the land and the intention of the testator is not clear, the court may and should, for the purpose of ascertaining the intention, read the will in the light of the circumstances existing when it was made." And as stated by the author in 69 C. J. 1170: "There has always existed a marked distinction between a charge on the realty for the payment of debts and one for the payment of legacies; as to the former, the courts may act on slight implication and on moral principle to uphold the charge, but as to legacies there must be a clear manifest intention that the devisee or heir should take subject to the legacies; * * * ." And in *Martens v. Sachs,* 138 Neb. 678, 294 N. W. 426, this court approved the following from 69 C. J. 1183: "In the absence of anything indicating a contrary intention, land specifically devised will be charged with the payment of legacies where the will expressly directs the devisee to pay the legacies; or where the land is specifically devised 'subject to,' 'charged with,' or 'on condition that' the devisee pay the legacies."

It is further contended that the provisions of paragraph IV of the will create a conversion of the realty into personalty. After giving to Karl E. Hahn all of her real estate in

the first paragraph and then giving Mary Marguerite Verret $5,000 in the second paragraph and providing for the residuary in the third paragraph, which is immaterial here as there will be no residuary, and making no provision in the will for the payment of debts, costs, or expenses of administration, the testatrix, in the fourth paragraph of her will, gives to her executors the power to manage the assets of her estate and authority to sell the same. The authority given to the executors to sell does not either require or direct them to do so nor does it provide any purpose for which it should be sold but expressly makes it "subject to the terms of this Will."

By the terms of paragraph I of the will she had already given the real estate to her son and by none of the provisions of the will was it subject to any conditions except as might be imposed upon it by law. As stated in 21 Am. Jur. 774, sec. 700: "The effect of a testamentary power of sale depends primarily upon the intention of the testator as evidenced by the wording thereof. Such power may work an immediate equitable conversion of the realty as between the executor and the heir or legatee. In order, however, to work such a conversion there must be a positive direction to sell or an absolute necessity to sell involved in the due execution of the will, or such a blending of real and personal estate by the will as to show clearly that the testator intended to create a fund out of both real and personal estate and to bequeath such fund as personalty." And in *Chick v. Ives*, 2 Neb. (Unof.) 879, 90 N. W. 751: "Where the provisions of a will are of such a character as to amount to a positive direction to convert the real estate into money or personalty, or where by a fair construction of the will such intention of the testator is clearly shown by implication, a court of equity will decree that an equitable conversion of the real estate of the testator into money, or personalty, took place at the time of his death. 2 Jarman, Wills, 183; *Wurts' Executors v. Page*, 4 C. E. Greene (N. J. Eq.) 365; *Stagg v. Jackson*, 1 N. Y. 206; *Martin v. Sherman*, 2 Sandf. Ch. (N. Y.) 342; *Van Vechten v. Van Veghten*, 8 Paige Ch.

(N. Y.) 104." And in *May v. American Red Cross*, 140 : Neb. 43, 299 N. W. 272: "As determinative of a question similar to that here presented, this court has approved the following language: 'The rule is that where there is a positive direction in a will to convert the real property into personalty, or where there is a power of sale in a will and bequests of such a character as to plainly indicate a testamentary intent that such power shall be executed to provide the means of satisfying them, or where the provisions of a will cannot be carried out without converting the realty into personalty, and the conditions are such that the testator must have contemplated that such conversion would take place to that end, courts of equity deal with the estate as personal property from the time the will takes effect—from the death of the testator.' *Stalder v. Stalder*, 105 Neb. 367, 180 N. W. 566. See, also, *Harrington v. Pier*, 105 Wis. 485, 82 N. W. 345; *In re Estate of Willits*, 88 Neb. 805, 103 N. W. 757."

As has been stated, the will contained no positive direction to convert the real property into personalty nor does it contain a bequest of such a character as to plainly indicate a testamentary intent that the power of sale shall be executed to provide the means to satisfy it. Let us then examine the facts to see whether or not the conditions at the time of the drafting of the will were such that the testatrix must have contemplated that such conversion would take place to the end that the bequest to Mrs. Verret would be paid if the personal property were not sufficient. Under our statute and decisions of this court, it is the rule that in the construction of a will we must give effect to the true intent of the testator so far as it can be collected from the whole instrument, if such intent is consistent with rules of law, and as stated in *Fisher v. Fisher*, 80 Neb. 145, 113 N. W. 1004: "In arriving at an understanding of the intention of the testator and the meaning of the language used in his will, it is the duty of the court to take into consideration all the facts and circumstances surrounding the testator at the time of the making of the will." See, also, *In*

*re Estate of Hunter*, 132 Neb. 454, 272 N. W. 318; *Lehman v. Wagner*, 136 Neb. 131, 285 N. W. 124. At the time of making her will on May 13, 1933, Mary Hahn had two people who were the natural persons to whom she would give her worldly goods. These were her son, Karl E. Hahn, and her granddaughter, Mrs. Verret, and she was on friendly terms with both. At that time she owned 400 acres of farm land in Adams county and personal property well in excess of $5,000, she having sold her home prior thereto for some $4,000. In her will she gave her son all her real estate which consisted of this 400-acre farm. To her granddaughter she gave $5,000 and the residue was to be divided equally between them. She requested in the will that the money given to Mrs. Verret be used for a home but this in no way restricted the bequest, which was absolute, but was merely an express of desire. She then gave her executors authority to handle the assets of her estate and power to sell and convey, subject to the terms of her will. In 1934 she used $4,-350 to buy her granddaughter a home. She also deposited her money in a joint account with her granddaughter as she lived with her and had complete confidence in her. It seems clear that when she made her will the testatrix had sufficient money to pay the bequest and have ample left for debts, costs, and expenses of administration and that by the powers she gave to the executors she did not intend to create a conversion of the land into personalty for the purpose of paying this bequest. It, likewise, seems clear that she had no intention of creating a lien on the lands by this bequest. Unfortunately for the granddaughter there is not sufficient personal property at this time to pay the bequest.

For the reasons herein given we find the decree of the lower court correct except that the title is quieted in Karl E. Hahn, subject to the liabilities, if any, in the estate of Mary Hahn, deceased, as the same may be finally determined.

AFFIRMED AS MODIFIED.

YEAGER, J., participating on briefs.