LAMBERT v. LAMBERT et al.

No. 14036.

United States Court of Appeals
Eighth Circuit.

June 20, 1950.

Warren K. Dalton and Robert Van Pelt, Lincoln, Neb. (Donald F. Sampson, Leo J. Armatys, Central City, Neb., Lloyd J. Marti, and Joseph P. O'Gara, Lincoln, Neb., on the brief), for appellees.

Before JOHNSEN, RIDDICK, and STONE, Circuit Judges.

RIDDICK, Circuit Judge.

On July 16, 1929, Thomas R. Lambert conveyed to his son, Mark V. Lambert, by a deed containing covenants of general warranty a ranch of approximately 2,700 acres in Nebraska, the deed reciting a consideration of $1, other valuable considerations, and the agreement of the grantee to pay the grantor $3,000 annually throughout the grantor's life. A lien upon the land conveyed was reserved by the grantor to secure the annual payments from the grantee.

On the same day and as part of the same transaction, Mark V. Lambert signed a writing entitled "Agreement" affirming his obligation to make the annual payments of $3,000 reserved in the deed, denominating the payments as "rental", and fixing the dates upon which the payments were to be made and the interest rate on matured payments. On February 3, 1933, Thomas R. Lambert by a quitclaim deed conveyed the same lands described in the deed of July 16, 1929, to Mark V. Lambert.

The question on this appeal is whether, as the District Court held, the quitclaim deed of February 3, 1933, was effective to release Mark V. Lambert from his liability expressed in the deed and agreement of July 16, 1929.

On July 16, 1929, Thomas R. Lambert had passed his eightieth year and was living with his second wife, Susan Lambert, their marriage having endured for nearly fifty years. During his residence in Nebraska Thomas R. Lambert had accumulated a substantial fortune. He was the owner of more than 9,000 acres of farm and ranch lands in Nebraska, a large number of cattle, and other property, including 105 shares of the capital stock of the Loup Valley State Bank of Palmer, Ne-

Albert S. Johnston, Lincoln, Neb. (H. S. Lattimore, Fort Worth, Tex., on the brief), for appellant.

braska, commonly known as the Lambert Bank of which he was president.

Approximately two years before the execution of the 1929 deed and agreement, Thomas R. Lambert and his wife, Susan Lambert, went to Texas where they spent the greater part of their time, residing in a rooming house or hotel operated by the appellant who later became the third Mrs. Lambert. While in Texas marital difficulties developed between Thomas R. Lambert and his wife, Susan. Early in 1929 Susan Lambert returned to Nebraska where she instituted proceedings for separate maintenance and to protect her interest in her husband's property. Several months later Thomas R. Lambert returned to Nebraska to initiate negotiations for a property settlement with his wife and to facilitate the entry of a divorce decree and his marriage with the appellant in this action.

These negotiations, in which the three sons of Thomas R. Lambert participated, resulted in a family settlement whereby Thomas R. Lambert, in addition to the conveyance of July 16, 1929, to Mark V. Lambert, also conveyed Nebraska lands to his other sons and to Susan Lambert. The agreement of Mark V. Lambert to pay his father $3,000 a year for life, executed concurrently with the deed of July 16, 1929, was delivered to Thomas R. Lambert and remained in his possession until his death.

After the completion of the transactions above recited, Thomas R. Lambert divorced Susan Lambert and married appellant.

The era of great prosperity and high prices prevailing in this country came to a sudden end within a few months after Thomas R. Lambert had concluded the settlement with his wife and family and moved to Texas. Among the victims of the depression were Thomas R. and Mark V. Lambert and the Lambert Bank. By July 1932 the Lambert Bank was in such precarious condition the stockholders had been compelled to contribute additional capital to maintain its solvency. Thomas R Lambert and Mark V. Lambert were jointly liable for $7,000 borrowed for this purpose.

Thomas R. Lambert and Mark V. Lambert each owned stock in the Lambert Bank of a par value of $10,500. Under Nebraska law they were contingently liable for the debts of the bank in an amount equal to the par value of their stock. Because of unfortunate business ventures in Texas where Thomas R. Lambert then resided, and because of the depression, Thomas R. Lambert had no assets of any kind available to meet the liabilities with which he was threatened. Mark V. Lambert was also hard hit by the depression. Thomas R. Lambert had reached the age of 85 years. The liquidation of the bank and the payment of its depositors would not only save the reputation of the Lambert name for financial responsibility, but offered the only prospect for averting complete loss by Thomas R. Lambert of his remaining estate.

In this situation Thomas R. Lambert executed and delivered to Mark V. Lambert the quitclaim deed of February 3, 1933. The deed is in the following language:

### "Quit Claim Deed

"This Indenture, Made this third day of February, A.D. 1933, between Thomas R. Lambert, party of the first part, and Mark V. Lambert, of Palmer, Nebraska, party of the second part, Witnesseth, that the said party of the first part for and in consideration of the sum of One Dollar and other valuable consideration, to him duly paid, the receipt whereof is hereby acknowledged, does remise, release, and quit-claim, and by these presents, does forever for himself, his heirs, executors and administrators, remise, release and forever quit-claim and convey unto the said party of the second part, and to his heirs and assigns forever, all his right title, interest, estate, claim and demand, both at law and in equity, of, in and to all his claim and right to the following described real estate situated in the State of Nebraska, to-wit:

* * * *. * *

together with all the tenements, hereditaments, and appurtenances to the same be-

longing and all the estate, title, dower, claim or demand whatsoever of the said Thomas R. Lambert to have and to hold the above described premises unto the said Mark V. Lambert, his heirs and assigns; so that neither he, the said Thomas R. Lambert or any person in his name and behalf, shall or will hereafter claim or demand any right or title to the said premises or any part thereof, but they and every one of them shall by these presents be excluded and forever barred."

After the execution of the 1933 quitclaim deed, Mark V. Lambert borrowed sufficient funds from the Reconstruction Finance Corporation and other sources to pay the bank's liability, personally obligated himself for the payment of the loans, and secured them by mortgages on his lands including the ranch conveyed to him by Thomas R. Lambert. The bank's depositors and other creditors were paid with the funds thus obtained. Mark V. Lambert proceeded with the liquidation of the bank. The status of this liquidation at the time of the trial of this action is not shown by the evidence, although it appears that the Reconstruction Finance Corporation mortgage had been satisfied.

Mark V. Lambert paid Thomas R. Lambert all of the annual installments of $3,-000 called for by the deed of 1929, as they matured, until the execution of the quitclaim deed. Beginning in February 1933 and continuing to the death of Thomas R. Lambert in December 1941, Mark V. Lambert made regular contributions to the support of his father varying in amounts from slightly over $700 in 1933 to approximately $2,400 in 1938, and in other years in the amount of $1,200 or more. The court found on substantial evidence that these contributions were gifts to Thomas R. Lambert and not payments in recognition of any obligation under the deed of 1929.

After the execution of the quitclaim deed and before 1937 Thomas R. Lambert never asserted any right to a continuance of the payments provided for in the deed and agreement of 1929. But on March 20, 1937, he made a will, subsequently admitted to probate in Texas, devising to the appellant what he described as "back rentals" owing to him by Mark V. Lambert. On August 20, 1937, he gave appellant a note for $10,000, pledging as collateral "all bank stocks and assets of my interests in the Loup Valley State Bank of Palmer, Nebraska. Also my income from my Palmer ranch, conditionally deeded to M. V. Lambert of Palmer, Nebraska." On the same day he signed and delivered to appellant an instrument in which he stated that his income from the ranch conveyed to Mark V. Lambert was then in arrears several thousand dollars and again pledging "the balance now due me as collateral on this note."

In August 1938 Thomas R. Lambert and the appellant returned to Nebraska where they employed counsel to institute proceedings against Mark V. Lambert for an accounting of the bank liquidation and for collection of payments under the deed of 1929. As the result of negotiations between counsel representing Thomas R. Lambert and appellant and Mark V. Lambert, who was not represented by counsel, Mark V. Lambert made an offer of settlement, which Thomas R. Lambert and appellant accepted in writing. It is unnecessary to state the terms of this offer since the trial court explicitly refused to base the decision on it. But after its acceptance Thomas R. Lambert never again asserted a claim against Mark V. Lambert based on the 1929 transaction.

Thomas R. Lambert died in Texas on December 1, 1941. On August 23, 1945, his will was admitted to probate by order of the Probate Court in Texas on petition of appellant who qualified as executrix on April 30, 1946. She presented a claim against the estate of Thomas R. Lambert based upon his note to her for $10,000. The claim was allowed in full on October 21, 1946.

This action was instituted on November 9, 1946, by Dorothy Lambert as executrix of the estate of Thomas R. Lambert. Later, appellant assigned to herself individually the cause of action sued on in this case, the assignment having the approval of the Texas Probate Court, and was substituted as plaintiff in her individual ca-

pacity in this action. The appellant's contentions are that the warranty deed and agreement of July 16, 1929, are in full force and effect; that, after allowing Mark V. Lambert credit for all payments made to Thomas R. Lambert, he is still indebted on the obligation expressed in the deed and agreement of July 16, 1929. In defense, Mark V. Lambert relies on the quitclaim deed of February 3, 1933, as a release of the lien contained in the deed of July 16, 1929, and of his obligation to make the annual payments to Thomas R. Lambert expressed in the deed and agreement of the same date.

■ The interpretation of deeds to Nebraska land and the question of their effect on the rights of grantor and grantee are questions of Nebraska law, Magnolia Petroleum Co. v. Thompson, 8 Cir., 106 F.2d 217, 223; Los Angeles & Salt Lake R. Co. v. United States, 9 Cir., 140 F.2d 436; Chidester v. City of Newark, 3 Cir., 162 F.2d 598, on which this court will not substitute its judgment for that of the trial judge in the absence of a clear showing of error. Russell v. Turner, 8 Cir., 148 F.2d 562, 564, and cases cited.

■ The Nebraska statutory rule for the construction of deeds is as follows:

"In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true intent of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law." § 76-205, R.S.Neb.1943, § 76-109, C.S.Neb.1929.

"Every conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." § 76-106, C.S.Neb.1929.[1]

The statutory rule of construction of deeds requires the courts to give effect to the intent of the parties as collected from the instrument as a whole, but permits the inference that the entire interest of the grantor is not conveyed where the language of the whole instrument reasonably justifies it. Reuter v. Reuter, 116 Neb. 428, 218 N.W. 86, 88.

■ Another rule of interpretation of written instruments in effect in Nebraska is that "in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance." Farmers Union Cooperative Elevator Federation v. Carter, 152 Neb. 266, 40 N.W.2d 870, 873.

■■ The sum of the rules just stated is that the intent of the parties to the transaction of July 16, 1929, must be found in the language of both the deed and the agreement of that date. The Supreme Court of Nebraska has held that the right to unaccrued rent is a species of incorporeal hereditament to be classed as real as distinguished from personal property, which passes with the conveyance of land unless a contrary intent can be reasonably inferred from the terms of the instrument of conveyance. National Bank of Commerce of Kansas City v. Lefferdink, 110 Neb. 275, 193 N.W. 916; Reichert v. Mulder, 121 Neb. 21, 235 N.W. 680; Hahn v. Verret, 143 Neb. 820, 11 N.W.2d 551. Read together as one instrument, the deed and agreement of 1929 reasonably support the inference that the parties regarded the annual payments reserved in the deed in the nature of rent payable during the lifetime of the grantor. The trial court held that by the deed and agreement of 1929 Thomas R. Lambert effectively reserved an interest for life in the premises conveyed, "assignable and descendible" under Nebraska law. We find nothing in the Nebraska decisions relied on by appellant to require this court to reject the trial judge's decision on this question of Nebraska law.

1. § 76-106, C.S.Neb.1929, was in effect at the time of the execution of the quitclaim deed of 1933. For the present statutory provision to the same effect see § 76-104, R.S.Neb.1943.

This brings us to the question of the effect°of the quitclaim deed of February 3, 1933. Appellant does not contend that there is any ambiguity in its language. She admits that it is effective to convey any interest which Thomas R. Lambert had in the land conveyed at the time of the deed's delivery. Her argument is that nothing in the language of the quitclaim deed expressly releases the obligation of Mark V. Lambert expressed in the agreement of 1929, and that this fact, together with Thomas R. Lambert's retention of the agreement of 1929, compels the conclusion that the parties never intended by the quitclaim deed to release the obligation of Mark V. Lambert to pay Thomas R. Lambert the $3,000 annually during his lifetime. Appellant also contends that the admitted fact that the motivating cause for the execution of the quitclaim deed was to enable Mark V. Lambert to liquidate the Lambert Bank without loss to depositors points to the same conclusion.

At the threshhold of this argument appellant is met with the explicit and unambiguous language of the quitclaim deed which, as the trial court pointed out, seems to have been deliberately adopted for the purpose of extinguishing every right, claim, or interest which Thomas R. Lambert retained as against Mark V. Lambert by the transaction of 1929. In the face of this language, this court can not be expected to say that the ruling of the trial judge that the quitclaim deed was effective to release Mark V. Lambert from the obligation expressed in the deed and agreement of 1929, read together as one instrument, is contrary to Nebraska law, or that his finding that such was the intent of the parties, considered as a question of fact, is clearly erroneous.

If we are at liberty to go•beyond the language of the quitclaim deed and look to the situation of the parties at the time of its delivery and the circumstances surrounding its execution, we reach the same conclusion. At that time a relation of complete confidence existed between Thomas R. Lambert and his son, Mark V. Lambert. That this relation continued for years after the delivery of the deed is apparent from the fact that Mark V. Lambert made such contributions as were necessary to the support of Thomas R. Lambert until his death, and that in his will Thomas R. Lambert appointed Mark V. Lambert an executor. For many years they had been associated in the management of the Lambert Bank, and as officers and stockholders of the bank they were morally responsible for its solvency and legally liable for its debts to the extent of their interests as stockholders. There is testimony in the record that at the time of the execution of the quitclaim deed Thomas R. Lambert declared that he had delivered the deed in order that all of his assets might be placed behind the Lambert Bank, and the record is not without evidence that the protection of the reputation of the Lambert name in the community in which the bank operated for financial responsibility and intergrity was a matter of prime importance to him. At the time of the delivery of the quitclaim deed Mark V. Lambert had fully met all his obligations under the transaction of 1929 as they matured, and none was then due and payable. Thomas R. Lambert had passed the age of 85. What he contributed to the liquidation of the Lambert Bank by the quitclaim deed was a surrender of a right which he might not live to realize. What he received in return was the prospect of saving his interest in the bank, the release from his liability as a stockholder in and debtor to the bank, and the obligation of Mark V. Lambert to contribute his estate and personal liability to that end.

Thomas R. Lambert and Mark V. Lambert were men of experience both as bankers and dealers in real estate. The presumption is inescapable that they understood fully the effect of the transaction in which they engaged, and that they understood the difference between an absolute release of the obligation of Mark V. Lambert under the agreement of 1929 and the subordination of that obligation to subsequent liens. That they failed to use language designed merely to subordinate the lien reserved in the 1929 deed to the lien to be placed on the land to liquidate the bank is evidence that such an arrangement was not intended.

. The statements contained in the will of Thomas R. Lambert and in the agreement with appellant reciting collateral security for the note of Thomas R. Lambert for $10,000, and his action in consulting Nebraska lawyers about a possible right of action against Mark V. Lambert for payments reserved in the deed of 1929, may indicate the state of mind of a man approaching 90 years of age concerning transactions long completed. They were not admissible in hostility to the written memorials of these transactions made at the time of their completion. Colbert v. Miller, 149 Neb. 749, 32 N.W.2d 500, 502.

In the light of the circumstances just discussed, the retention by Thomas R. Lambert of the agreement of July 16, 1929, is of little or no significance on the question of his intent as grantor in the quitclaim deed. Neither is the fact that the quitclaim deed was delivered to make possible the liquidation of the Lambert Bank. The question here is not what causes operated to produce the agreement expressed in the deed but what that agreement was. The agreement of July 16, 1929, if regarded as evidence of a debt, separate and distinct from the deed of the same date, was not a negotiable instrument, did not at the time of the delivery of the quitclaim deed represent a debt due and payable to Thomas R. Lambert, and added nothing by way of necessary evidence to the obligation expressed in the deed itself.

The judgment of the District Court is affirmed.